Judge Carr.*
Cutler sued Hinton in Case for money had and received to his use. On non-assumpsit pleaded, the Defendant offered as a set-off, an account for goods, amounting to $795 10, charged as taken up by Cutler, with the firm of Hanserd %■ Co., of which firm Hinton was one, and produced a Deed, showing a transfer of all the debts of the firm to Hinton, and also a witness to prove, that the goods were taken up by one Love, (the son-in-law of Cutler,) on his (Cutler’s) promise to pay. The Court rejected-the set-off. The Defendant excepted, and a Verdict and Judgment were had against him for $2,786 60, with interest. The Defendant took no appeal, but filed his Bill for an Injunction, stating the facts of Cutler’s obtaining a credit with the Plaintiff's house for his son-in-law, and a small part for himself; that the debts of the firm were transferred to the Plaintiff; that the Plaintiff held a sum of money claimed by Cutler, which he was ready to pay him, retaining the amount which Cutler owed him; that Cutler sued for the money, and the Law Court refused to allow the set-off, because it was a debt due to a firm, &e., and praying the benefit of the set-off.
The Answer of Cutler denies positively that he owes the account claimed of him; avers that he never undertook to pay the firm for goods taken up by his son-in-law, Love, or gave him a credit with them, and relics on the Statute of Frauds to protect him from any such charge. Several depositions were taken, and on hearing, the Court perpetuated the Injunction for the $795 10, and Cutler appealed.
On the argument, the Counsel for the Appellant rested principally on two points. 1st. That the account, if chargeable to Cutler, might have been set-off at Law, and so, that Equity had no jurisdiction: but 2dly. That it could be set-off, neither at Law nor in Equity, because the promise being collateral and verbal, was void under the Statute pf Frauds. We will consider this last point first, as it strikes at the root of the claim. Upon this branch of the Statute, prescribing the mode in which (< thé special promise to answer for *515 the debt, default, or miscarriage of another person,” must be made, there is no difference of construction, that I have seen, between Courts of Law and Equity; indeed, it is a class of cases, which can very rarely come into Equity. The question generally is, whether the promise is for the debt of another, or not; in other words, (which, though not used by the Statute, have become technical terms,) whether the promise be collateral, or original. The cases are very numerous on the subject, and some of them contain very nice and subtle distinctions; but, the principle, which seems to be settled, is this, (as laid down by Buller, J. in Matson v. Wharam, 2 Term Rep. 80, and by Judge Roane, in Waggoner v. Gray’s Administrators, 2 Hen. & Munf. 603,) “That if the person, for whose use the goods are furnished, be liable at all, any other promise by a third person to pay that debt, must be in writing, otherwise it is void by the Statute of Frauds.” Thus, in Anderson v. Hayman, 1 Hen. Black. 120. The Plaintiff was a woollen draper in London: B. was his rider, to receive orders: the Defendant meeting with B. desired him to write to the Plaintiff, requesting him to supply the Defendant’s son with whatever goods he might want, on his, the Defendant’s credit; and at the same time said, “ Use my son well, charge him as low as possible, and I will be bound for the payment of the money, as far as 800Z. or l,000f.” B. wrote to the Plaintiff, giving him the information. Soon after, the son received goods from the Plaintiff, to the amount of 8001. which were delivered to him, in consequence of the father’s order: The son was debited in the Plaintiff’s books: he afterwards became a bankrupt, and this action was brought against the father. The Court were clearly of opinion, that this promise, not being in writing was void by the Statute of Frauds, as it appeared that credit was given to the son, as well as to the father. In Buckmyr v. Darnall, 2 Lord Raymond, 1,085, the Plaintiff declared that the Defendant, in consideration that the Plaintiff, at his request, would let to hire, and deliver to one J. E. a gelding to ride to Reading, that the said J. E. would deliver the gelding to the Plaintiff. Held, that this was a collateral promise, because Detinue would lie against J. E. on the bailment. These cases, out of a vast multitude, serve to exemplify the general principle, that where the promisee has a double remedy, both against the promiser, and him in whose behalf the promise is made, such promise is collateral and must be in writing.
Let us now see what was Cutler’s promise. Samuel Hinton has given evidence three times. In his evidence before the Law Court, he says that Culler desired him to say to any other merchants that he would pav for any goods sold to Love, it *517 "the same did not exceed $4,000. In his affidavit, he says, “In December, 18J6, Doctor Cutler requested me to inform John Hanserd fy Co.,, or any other person or persons, of whom Love, his son-' in-law, might purchase goods, that he would pay for Love, $4,000.” In his deposition, he says, that in December, 1816, Cutler called on him, and requested him to tell Hanserd <§’ Co., or any other person of whom Love might wish to purchase goods, that he ivould pay for said Love $ 4,000. Now, take either of these forms, and it seems to me, that this is a collateral undertaking: he promises to payybr Love, to any person that Love might purchase, or wish to purchase goods of. Love, then, was to purchase the goods, which of course, would render him liable for them, and Cutler was to pay the money for Love, not for himself. Unless I have confounded things strangely, this is clearly collateral. The next witness is Turner. He says that Cutler agreed to give Love $4,000, as a capital to commence with; which sum was to be paid by Cutler, at different periods; and in the mean time, he authorised and requested the deponent to inform any gentleman, of whom Love might wish to purchase goods, “ of the arrangement.’’’ Of what arrangement? Why, that he had agreed to give Love $ 4,000. This might induce the merchants to trust Love, but surely would be no promise, either original or collateral, made by Cutler to the merchants, to pay them money, ¿owe is the only other witness. I question very much whether he is admissible. He seems to stand nearly in the situation of Slaughter, in the case of Waggoner v. Gray’s Adm’rs., (before cited,) who was 'pronouneed by this Court to be inadmisible. I have not thought it worth while, however, to consider this point. Admitting his testimony, and that he puts the promise of Cutler in such a form as to make it an original one, yet the positive Answer of Cutler, directly responsive to the Bill, over-weighs it, oven if it were entitled to full credit. I consider, then, that the promise, as proved here, is collateral, and not being in writing, could raise no claim against Cutler. It may not be amiss to remark, that I have not overlooked the fact that the goods were charged by Hanserd S¡- Co. to Cutler, and not Love, and that this is noticed in the cases as a fact tending to show to whom the credit was originally given: it seems to me, that such entries made in the books of merchants, are better evidence against than for them. Where they charge the goods to the person to whom they are furnished, it is strong to show that they considered themselves dealing with him, and (like the admissions of a party,) may be safely taken against them: but it would be of dangerous tendency to say, that by an entry made by themselves, in their own books, they *518 could change the complexion of their case, and make that an original, which would otherwise have been a collateral, promise. This Would be departing wholly from the general policy of the Law, and the particular policy of the Statute of Frauds, which is, in my opinion, a wise and salutary Law, and should be fairly and fully carried into execution by the Courts.
With respect to the question of set-off, it need hardly be considered; for, as to that part of the account claimed as furnished to Love, on the promise of Cutler, it was (if I am right,) no debt at all; and as to the part charged as furnished to Cutler himself, we think it no ground for coming into Equity.
I think that the Decree should be reversed, the Injunction dissolved, and the Bill dismissed.
Judge Cabell, and the President, concurred.

 Absent, Ghees, and Coaeteb.