ALLEN, P.
The cases upon undertakings coming within the scope of that branch of the statute of frauds prescribing the mode in which the special promise to answer for the debt, default or misdoings of another person should be made, have been numerous, and many subtle, if not shadowy, distinctions have peen taken. Every collateral promise to answer for the debt, default or misdoings of another person, is within the statute, and void if not in writing ; but original undertakings need not be in writing, not being within the statute. The difficulty is in determining under which head the undertaking in any particular case is to be classed. Where the party undertaken for is under no original liability, the promise is an original promise, and binding though notin writing; the promiser is the party immediately liable, and the undertaking is to pay or answer for his own debt or default, and not for another’s. But it has been settled in England that if the party undertaken for is liable, the promise must be in writing. This is the principle decided in the leading case of Birkmyr v. Darnell, 1 Salk. R. 27. There, in consideration that the plaintiff would deliver his horse to A, the defendant promised that A should return him safe. This case was held to be a *collateral undertaking for another ; ior the undertaker comes in aid to procure credit for another ; and there is a remedy against both ; for the plaintiff could maintain detinue upon the bailment against the original hirer, as well as assumpsit on the promise against the defendant. In the note to Porth v. Stanton, 1 Wms. Saund. 211, it is said, “that it is clear the mere existence of the debt, default or miscarriage, is not sufficient to support the promise ; there must be some consideration for it, and therefore the promise must in all cases be founded on a new consideration. The question indeed is, What is the promise? Whetherit be a promise to answer for the debt &c. of another, for which that- other remains liable, not what the consideration for that promise is ; for it is plain that the nature of the consideration cannot affect the terms of the promise itself, unless it be an extinguishment of the liability of the other party.”
The cases of Goodman v. Chase, 1 Barn. & Ald. 297, and of Williams v. Leper, 3 Burr. R. 1886, illustrate the last proposition. In the first case, the defendant, in consideration that the plaintiff would discharge his debtor arrested under a ca. sa. promised to pay the debt. It was held unnecessary that the promise should be in writing, for the debtor’s liability ended on his discharge, so that the defendant was never liable for his debt; and in Williams v. Leper, the defendant having got possession of goods .which were subject to distress for rent in arrear, promised the landlord he would pay him the rent, if he would desist from distraining. The judge considered the goods as the debtor ; and therefore the promise was not to pay the debt of another, but the debt for which the goods were liable, of which goods the defendant was owner. Nor is it material at what time the promise to pay for the debt or default of another is made, if the debt is a continuing debt for which the debtor remains liable. *In Matson v. Wharan, 2 T. R. 80, the court held that there was no distinction between a promise to pay for goods furnished for the use of another, made before they were delivered and after, if the person for whose use they were furnished is liable at all. Nor is there any distinction drawn by the cases referred to, as decided in the courts of England, whether the parol promise to pay the debt of another is supported by a consideration moving to the debtor or the promisee provided the original debt continues to subsist as a cause of action against the original debtor: Though in New York, in the cases of Farley v. Cleveland, 4 Cow. R. 432, King v. Despard, 5 Wend. R. 277, a different rule was adopted; those cases deciding that where there is a new and original consideration of benefit to the defendant or harm to the plaintiff moving to the party making the promise, the subsisting liability of the original debtor is no objection to the recovery. In Virginia, the cases of Waggoner v. Gray’s adm’r, 2 Hen. 6 Munf. 603; Cutler v. Hinton, 6 Rand. 509, and Ware v. Stephenson, 10 Leigh 155, have recognized and adopted the rule as deduced from the English cases. In the first case, Judge Roane lays down the rule to be, “that where the person on whose behalf the promise was made, is -not discharged, but the person promising agrees to seethe debt paid, *339 so that the promisee has a double remedy, the promise is collateral.”
In the case of Cutler v. Hinton, the defendant made the promise before the goods were delivered, saying he would pay for any goods sold to his son in law, or to any merchant of whom his son in law might purchase, that he would pay for him a certain sum. The promise was held to be collateral, and being verbal, void under the statute. Judge Carr, after a review of some of the leading English cases, concludes with the remark, “That these cases, out of a vast multitude, serve to exemplify the gen eral principle, that where *the promisee has a double remedy, both against the promiser and him in whose behalf the promise is made, such promise is collateral, and mustibe in writing.”
In the last case of Ware v. Stephenson, the consideration for the promise was for the benefit of the promiser; the articles were delivered to a workman engaged in building a house for the defendant; and the question in the case upon which the judges differed, was, Whether the workman was liable and bound to pay for the articles delivered to him ? Judge Brooke stated, that it was a well settled principle, that where the party to whom goods are delivered on the promise of a third person to pay for them, is bound to pay for them, the undertaking is collateral, and if not in writing within the statute ; but he thought from the facts that there was no original liability on the workman, and that he was not bound to pay for the articles delivered. Judge Stanard, with whom the other judges concurred, thought that the workman was responsible for the articles delivered, and said, “That whatever doubts may at one time have existed respecting undertakings within the scope of the statute, it has long since been definitively settled, that when an undertaking is for a consideration to be received by, or articles to be supplied to, a third person, if the transaction be such that the third person is responsible to the person who supplies the articles, or from whom the consideration proceeds, the undertaking is collateral, and if oral not binding.
To apply these principles to the present case: It appears from the evidence certified as given upon the motion for instructions, and upon overruling the motion for a new trial, that the testator of the plaintiff in error, by a contract dated the 1st of January 1844, leased a salt property in Kanawha county to James M. Thompson, who bound himself to build a salt furnace, *fixtures, &c., at his own expense. The testator of the plaintiff in error by the contract agreed to furnish Thompson the sum of two thousand dollars towards said improvements, and in part payment of their erection. In pursuance of the said contract, Thompson employed the defendant in error to build some cisterns, and to do the work for him under the lease. After doing a part of the work, he stopped it, announcing his determination to leave, declaring he was done with the job, and would not proceed with the work upon the faith or confidence of Thompson being paymaster for it. And thereupon, the said testator said to him the work was commenced; it must go on ; and told him to go on and finish it, that he would pay him for it, or see it paid. The defendant in error thereupon resumed work and continued, until it was finished.
The defendant in error further gave in evidence the declaration of said testator, shortly after the conversation aforesaid, that he would have to pay for the work done or doing by the defendant in error, and that he had already advanced Thompson two thousand dollars for improvements which the latter by his lease was bound to make.
It was further proved by the plaintiff in error, that her testator had advanced to Thompson more than two thousand dollars ; that Thompson could not make said improvements without such advances, and that he was unable to pay the defendant in error for his work according to the contract, either at the time of making the same or at any time since. That when the work was finished, the defendant in error rendered his account, being the same stated by him in the bill of particulars filed in the suit, which Thompson entered in his book in the presence of the defendant in error; the several payments made by Thompson from time to time during the progress of the work were deducted, a balance ascertained, for which Thompson executed *his bond at nine months. The bond is exhibited, and has two seal® to it, but is signed by Thompson alone; and was drawn to be signed by the testator; but there is no proof that he ever agreed to sign it. The insolvent papers of the defendant in error, including the schedule, were also given in evidence, from which it appears that on taking the oath of insolvency on the 29th of July 1847, he surrendered said note on Thompson, but did not surrender any claim on the testator. This suit was brought in the year 1848; and it was proved that the debt upon which the defendant in error took the oath of insolvency, was paid before he instituted this suit.
After the evidence was closed, the plaintiff in error moved for five instructions, all of which were given, with certain explanations and modifications, to which she objected; but her objections being overruled, she excepted; and a verdict being found against her for the balance of the claim, she moved for a new trial, and her motion being overruled, she again excepted.
I think there was no error in the court’s explanation to the first instruction moved for. By that instruction, the court was asked to tell the jury that from the surrender of Thompson’s bond in the schedule and the omission to set out any claim against the plaintiff’s testator, the jury might presume an admission on the part of the defendant in error, that at the time he took the oath the testator of the plaintiff in error was in nowise liable to him for money or property, under any antecedent engagement. The effect of the instruction, if given in the terms asked, might have been to have induced the jury to believe that they were *340 bound, from the facts stated in the instruction, to presume such admission, notwithstanding other circumstances in evidence might repel the presumption. The court informed the jury, that in forming their conclusion as to this presumed admission-, they ^should look not merely to the omission to surrender this claim in the schedule, but to all the facts in evidence. In this, I think, there was no error.
The second, third and fifil instructions were intended to present, and as I think, do present the real question involved in the case ; and that is, whether, under the facts, the evidence tended to prove the undertaking was original or collateral? The second and third are the same in substance ; and asked the court to instruct the jury, that if they were satisfied from the evidence, that the work and labor sued for was such as Thompson was bound to execute, and for which he was liable under his contract with the defendant in error to pay him, in such event the promise was collateral, and should be in writing to bind said testator. These instructions were not irrelevant. The evidence showed a contract between Thompson and the defendant in error; and that part of the work was performed under such contract before the promise by the testator. And the cases referred to establish, that whether the contract is collateral or original, depends on the liability of the party undertaken for. The court should have given the instructions as asked for, and without the qualifications annexed to them. The modifications were not warranted by the evidence, and were calculated to mislead the jury. There was no testimony proving or tending to prove that a portion of the work was not performed under the contract with Thompson before the promise of the testator. The promise declared upon was an entire promise covering the whole claim for the work performed by the defendant in error; and the court was not justified in assuming that there was any proof that the work sued for was not done under the original contract between Thompson and the defendant in error. The court was asked to tell the jury that if Thompson continued liable to the defendant in error *upon the first undertaking, the promise of the testator was not binding unless in writing. The qualification of the court evades this proposition altogether, by informing the jury that if they were satisfied the work was not done under the contract between Thompson and the defendant in error, but under the agreement between the testator and said defendant in error, and the promise of the former to pay for it, and that such promise was a direct one, it would be binding, although not in writing. Although the work may have been done under the promise of the testator, and though the consideration of such promise was sufficient, that does not make it an original promise, if in fact the original contract was with a third person, who continued responsible to the defendant in error, notwithstanding the promise of the testator. By the qualification of the court, the jury were instructed that I the defendant in error was entitled to recover from the promiser, notwithstanding the continued liability of the original contracting party, because the work was performed in consequence of the promise to be answerable for it. The terms used by the court were calculated to mislead the jury: It speaks of a direct promise, leaving it uncertain whether by that expression was meant an express promise by the testator to the defendant in error, or an original or collateral promise. An express promise to pay would probably be deemed by the jury a direct promise ; and if it was intended to be equivalent to an original promise, that was a question of law arising upon the facts upon which the instruction was asked; whereas the qualification refers-it to the jury to determine for themselves, whether under the facts it was a direct or original promise, or one merely collateral.
The fifil instruction asked the court to instruct the jury, that if the contract between 'Thompson and the defendant in error was not rescinded by agreement *between them, the mere fact that the testator of the plaintiff in error may have orally agreed to pay or to see him paid, did not extinguish the contract with Thompson, or his liability to pay the defendant in error. This was given with the qualification, that although there was no rescission between Thompson and the defendent in error, yet if the work was done for the said testator, under an original contract between him and the defendant in error, that the said testator made a direct promise to pay for the same, and the work was done on his credit and the fact of his promise to pay, it was binding on him. This qualification has no relevancy to the instruction. The proposition it propounded was, that if there was no agreement between the original parties to rescind their contract, a promise by a third person to pay would not extinguish the liability of the first promiser. To this there could be no objection ; and if the original liability continued, then the promise would be collateral. The qualification informed the jury that although there was no such rescission and extinguishment of liability, yet the promise, if made under the circumstances detathed, would be an original and not collateral promise. I think that in this the court erred.
The bill' of exceptions to the decision of the court overruling a motion for a new trial, refers to and adopts the statement of evidence contained in the second bill of exceptions. That bill of exceptions states the evidence of the witnesses examined on the trial, instead of the facts appearing to the court to have been proved by such evidence; and is, therefore not well taken under the rule of Bennett v. Hardaway, 6 Munf. 125, unless it appears to the appellate court, that after disregarding all the parol evidence of the exceptor, and giving to that of the other party full credit, the decision was wrong: And that, I think, sufficiently appears here.
*The evidence of the defendant in error shows that Thompson, the lessee *341 of the property, had bound himself to the landlord to erect a salt furnace and other fixtures necessary to the manufacture of salt, at his own proper cost and charges ; that he made the contract with the defendant in error to do the work for him under the lease ; that the defendant in error, under this contract, had commenced and performed a portion of the work, the value of which does not appear ; and that he then stopped work and refused to proceed with it under his contract with Thompson, alleging, as his reason for quitting the work, that Thompson was embarrassed, and unable to pay him. Thereupon, the testator of the plaintiff in error made the promise on which the suit was brought. The promise was made after the work had been commenced and a part had been executed. There was no distinct promise to pay for the work thereafter to be executed, as contradistinguished from what had been done. The promise was entire and extended to all work the defendant in error had contracted with Thompson to do. There was no new stipulation as to price, or the description of work or the mode of payment. The promise referred to the former contract which remained unchanged, and amounted to no more than an undertaking that if the defendant would go on and perform his contract with Thompson, the promiser would pay him for the work or see him paid. Thompson was no party to this undertaking. His liability to pay for the work was not extinguished or reduced by it. The undertaking, so far from annulling, provided for the fulfillment of his contract, and as his responsibility continued the promise, according to the decisions of this court, was collateral, and not binding unless in writing.
Viewing the evidence in the most favorable light, it could at most be held to establish an original undertaking *for work thereafter to be done. The promise, however, embraced the whole of the work ; that done, as also that to be done. The declaration on the special contract, charges it as one entire undertaking to pay for the whole of the work done under the contract ; and the hill of particulars filed with the declaration, charges the said testator with the whole of it. Under the circumstances, proved by the evidence offered by the defendant in error, Thompson was not released ; no notice of abandonment is proved; and the note for the balance shows he was held liable by the defendant in error for the whole of the work done. The debt had been incurred ; and though there may have been a sufficient consideration of benefit to the landlord, in avoiding the loss of rents and the injury resulting from leaving the work in ati unfinished state, to have supported a promise to pay for this liability of Thompson, the promise would have been collateral, though on a good consideration, and must be in writing to be valid. But where the verbal promise is entire, and part of it relates to a matter which renders it necessary under the statute that the promise should be in writing, the whole promise is void. Being entire and part of it void, the whole is defective. Chit. on Contract 61. In the case of Thomas v. Williams, 21 Eng. C. L. R. 142, the tenant was indebted for a quarter’s rent: the defendant, an auctioneer, was about to sell the tenant’s goods, which were on the demised premises, and the landlord being about to distrain for the quarter’s rent due, the defendant verbally promised to pay not only the rent due but the rent which would become due the ensuing quarter. The court held that the promise was void, and being entire, not even the rent due was recoverable.
Under the case of Williams v. Leper, ubi supra, and cases of that character, where the party had surrendered the goods or discharged the debt, such promise *was held valid though notin writing. But in the case of Thomasv. Williams, EordTenderden, C. J., said, “There is no case in which the promise of payment has gone beyond the amount of the right vested in the party to whom the promise was made, or beyond the assumed value of the fund out of which the payment was to be made.” The right vested in the plaintiff and for which he could have distrained was the rent in arrear, but the promise of payment went beyond that, to the rent which would thereafter become due, and was void on that account as to all. So in Head v. Baldrey, 6 Adol. & Ell. 459, 33 Eng. C. L. R. 109, the promise was void by the statute of frauds for want of a written memorandum as to one of the subject matters, but as to the other no writing was necessary ; but the court held the agreement was indivisible and bad altogether. To the same effect is Mechelen v. Wallace, 7 Adol. & Ell. 49, 34 Eng. C. L. R. 32; Lord Lexington v. Clarke, 2 Ventr. E. 223; Chater v. Beckett, 7 T. R. 201; Loomis v. Newhall, 15 Pick. R. 159. Upon both grounds it seems to me the verdict was not warranted by the evidence ; and that there should have been a new trial.
The other judges concurred in the opinion of ALLEN, J.
Judgment reversed.