BOYKIN & McRAE *vs.* DOHLONDE & CO.

| 37 | 577 |
| 101 | 633 |
| 37 | 577 |
| 110 | 139 |
| 37 | 577 |
| 124 | 389 |

[ACTION FOR PRICE OF GOODS SOLD AND DELIVERED.]

1. *Statute of frauds as to promise to answer for debt, &c., of another; whether promise is original or collateral.*—In determining whether a

parol promise to pay·for·goods delivered to a third person is within the statute of frauds or not, .the decisive question· is, to whom was the credit given : if. the credit was given altogether to the defendant, his promise is direct and original, and not within the statute; *secus*, if any credit at all was given to the person· to whom the goods were delivered.

2. *Same.*—It is the province of the jury; in. such case, to determine to whom the credit was given ; and it is their. duty, in deciding that question, to take into consideration the extent of the undertaking, the expressions used, the situation of the parties, and all the other circumstances of the case. The fact that the goods were charged, on the plaintiff's books, to the person to whom they were delivered, if unexplained by other circumstances, would be very strong, if not conclusive evidence, that the defendant's promise was collateral; and, on the other hand, the fact .that the. plaintiff and defendant have both acted as if the credit was given solely to the defendant, if unexplained by other evidence, would be a circumstance strongly tending to show that his promise was direct and original; yet neither of these facts is conclusive, but; both are .susceptible of explanation, and their weight as evidence must depend upon the circumstances of the particular case.

APPEAL from the City Court of· Mobile.

Tried: before the Hon. ALEX. McKINSTRY·.

THIS action was brought by F. Dohlonde &·Co., against the appellants, to recover the sum of $1587 60, the price of certain goods, wares and merchandize sold and delivered. The complaint contained two counts ; the first alleging the sale and delivery of the goods to the defendants themselves, on the 31st March, 1860 ; and the second alleging the sale and delivery to R. S. & T. D. Weir, at the special instance and request of the defendants, on and before the 31st March, 1860. The defendants pleaded the general issue, and the statute of frauds. It appeared on the trial, that the plaintiffs were grocers in Mobile, where the defendants also were engaged in · business ; and that R. S. & T. D. Weir, to whom the goods were furnished, were merchants at Enterprise, Mississippi. The transactions between the plaintiffs and the Weirs commenced in. April, 1858, when the latter wrote a letter to the plaintiffs, requesting them to send goods to the writers. at Enterprise, and referring them to the defendants· for payment. The plaintiffs,

Boykin & McRae v. Dohlonde & Co.

through their clerk, exhibited this letter to the defendants, and inquired whether they would pay for goods forwarded to the Weirs; to which the defendants replied, as plaintiffs' clerk testified, that they would pay for the goods if the accounts were presented monthly. The plaintiffs forwarded the goods to the Weirs, and forwarded other goods at divers times, up to the 1st March, 1860, amounting in the aggregate to over $34,000 ; charging them on their books to the Weirs, and presenting monthly accounts to the defendants. With the exception of three payments, made by the Weirs, at different times, directly to the plaintiffs, and amounting in the aggregate to $3411, the accounts were paid monthly by the defendants, up to the 1st March, 1860, when a balance of $1587 60 was due to the plaintiffs. The Weirs became insolvent about the 1st March, 1860, and transferred all their assets to the defendants. The plaintiffs presented their account, on which the suit was founded, and which was then made out against the Weirs, to the defendants for payment, about the 1st April, 1860; and the defendants then refused to pay it, and denied their liability for it. The defendants read in evidence seven letters, written to them by the Weirs at different times, between the 29th April, 1858, and the 30th September, 1859; requesting them to pay the writers' accounts with the plaintiffs.

"The court charged the jury, (among other things,) that they must ascertain whether the goods were furnished on the credit of the Weirs, or of the defendants ; that if they were furnished on the credit of the Weirs, and the defendants were guarantors or sureties, then the plaintiffs could not recover ; that all promises for the debt, default, or miscarriage of another, are void by the statute of frauds, unless in writing; that, as this promise was not in writing, it was void, if it came within the statute ; and that this is the law as to any assurances or representations concerning the dealings of any other persons. If, however, the goods were furnished on the credit of the defendants, and would not have been forwarded unless the defendants had agreed

to pay all the bills that were rendered monthly, it does not come within the statute of frauds; and if the jury believe that the plaintiffs forwarded the goods to the Weirs, time and again, from April, 1858, to April, 1860, and the defendants regularly acknowledged their liability by the payments of the accounts when rendered, and did not notify the plaintiffs that they should not continue to do so, until after the insolvency of the Weirs, and their insolvency occurred after the March bill of goods had been forwarded, such acts of the defendants were circumstances to look at, in ascertaining what they considered the contract to be."

The defendants excepted to this charge, and requested several others charges, of which the court refused the following:

"4. To make a person liable for goods delivered to another, there must be an original undertaking by him, so that the credit was given solely to him, or there must be a contract in writing.

"5. If the goods were charged on the plaintiffs' books to the Weirs, being made by the plaintiffs themselves at the time of the sale, this fact would be almost decisive against the plaintiffs' claim against the defendants, as the original purchasers.

"6. If the jury believe, from the evidence, that the Weirs were liable at all to the plaintiffs for the goods furnished, then the defendants' promise, to make them liable, must have been in writing; and not being in writing, they should find for the defendants.

"7. That both the Weirs and the defendants can not be made originally liable; and if the goods were sold to the Weirs, and not to the defendants, the latter are not liable."

The defendants excepted to the refusal of these charges; and they now assign as error the charge given by the court, and the refusal of the several charges requested.

WM. BOYLES, for appellants.

R. W. WALKER, J.—In the construction and applica-

tion of that branch of the statute of frauds regulating promises made by one person to answer for the debt, default, or miscarriage of another, numerous difficulties have arisen, and many perplexing distinctions have been taken. But one anchorage at least has been gained by the course of decision in England and in this country; that is, that when the promise of the defendant is to pay for articles to be furnished to a third person, if the transaction be such that the third person is responsible to the person who supplies the articles, the promise of the defendant is collateral, and, if oral, not binding. This is the principle decided in the leading case of *Buckmyr v. Darnall*, 2 Lord Raymd. 1085; *S. C.*, 1 Salk. 27. There, in consideration that the plaintiff would deliver his horse to one English, the defendant promised that English should return him safe. Holt, C. J., Gould and Powell, Justices, were at first of opinion, that the case was not within the statute, because they thought that English was not liable upon the contract. Mr. Justice Powys differed. The chief-justice and his associates in opinion agreed, that if any trust was given to English, then the case would be within the statute; but they thought that no credit had been given to him. The case stood over for further consideration; and the chief-justice having advised with the judges of the court of king's bench, it was finally determined, that, as English might have been charged on the bailment, in detinue, on the original delivery, the promise made by the defendant was within the reason and words of the statute. The same doctrine was laid down in *Matson v. Wharam*, (2 Term R. 80,) by Buller, J., who said, "The general line now taken is, that, if the person for whose use the goods are purchased is liable at all, any other promise by a third person to pay that debt must be in writing; otherwise, it is void by the statute of frauds, 29 Car. II, c. 3."

The rule thus declared is adopted by Sergeant Williams, as a correct construction of the statute, in his note to *Firth v. Stanton*, 1 Wm. Saunders, 211 (a), and has been sustained by a great weight of authority in this country as

well as in Great Britain. When, therefore, an action is brought against one, charging him with the value of goods delivered to another, and on his promise to pay ; and it is set up in defense, that the promise was to pay the debt of another, and was not in writing, the decisive question is, to whom was the credit given. If the credit was given solely to the defendant—that is, if the goods were really sold to him, though delivered to another—the statute is then out of the case. But, if the whole credit was not given to the defendant—that is to say, if any credit at all was given to the party receiving the goods—the promise of the defendant is collateral, and within the statute. For, in that case, the plaintiff would have a remedy against the party receiving the goods ; and all the cases show that it does not matter upon which of the two parties the plaintiff principally depends for payment, so long as the person for whose use the goods are furnished is at all liable to him. Authorities *supra; Anderson v. Hayman*, 1 H. Black. 120 ; *Barber v. Fox*, 1 Stark. R. 270 ; *Chase v. Day*, 17 Johns. 114 ; *Rogers v. Kneeland*, 13 Wend. 114, 121 ; *Brady v. Sackrider*, 1 Sandford S. C. R. 514 ; *Cahill v. Bigelow*, 18 Pick. 369 ; *Matthews v. Milton*, 4 Yerger, 576 ; *Caperton v. Gray*, 4 Yerger, 563 ; *Hazen v. Bearden*, 4 Sneed, 48, 50 ; *Cutler v. Hinton*, 6 Rand. 509 ; *Ware v. Stephenson*, 10 Leigh, 155 ; *Noyes v. Humphreys*, 11 Gratt. 636 ; *Leland v. Creyon*, 1 McCord, 100 ; *Taylor v. Drake*, 4 Strob. 431 ; *Faires v. Lodanc*, 10 Ala. 50 ; *Puckett v. Bates*, 4 Ala. 390 ; *Sanford v. Howard*, 29 Ala. 691 ; Browne's Stat. Frauds, §§ 197-8 ; Addison Contr. 37-8 ; 3 Kent, (m. p.) 123.

The law of this case, therefore, is, that if the transaction was such that the Weirs are legally bound to the plaintiffs to pay for the goods, the promise of the defendants was not direct, but collateral, and, therefore, within the statute of frauds ; and the converse of the proposition is also true. It follows, that the court erred in refusing to give the fourth and sixth charges asked by the defendants.

It is proper to remark, that there is nothing in the evi-

dence which warrants the idea, that this was a joint purchase of the goods by the defendants and the Weirs, for the use of the latter. The undertakings of the parties were altogether distinct, and the liabilities growing out of them must also be distinct. If the Weirs are liable at all, it is as principals; and if the defendants are liable, it is not as co-promissors with the Weirs, but by virtue of a distinct contract of their own, to which the Weirs were not parties. Hence the question, whether a direct purchase by two persons, for the use of one, is governed by the rule above laid down, or constitutes an exception to it, does not arise upon the record, and we express no opinion in regard to it.—See *Wainright v. Straw*, 15 Ver. 215; *Williams, Ex parte*, 4 Yerger, 579; 1 Smith's Lead. Cas. (5th Am. ed.) 380, 382; Browne's Stat. Frauds, §§ 197–8; 2 Parsons Contr. 301; *Norris v. Spencer*, 18 Me. 324.

2. Whether a contract is collateral or original, may be a question of construction, as in *Scott v. Myatt*, 24 Ala. 489; and then it is for the court. But in cases like the present, the question, to whom credit was given, is one of fact to be determined by the jury.—1 Parsons Contr. 500; *Storr v. Scott*, 6 C. & P. 241; Browne's Stat. Frauds, § 199; 1 Smith's Lead. Ca. (m. p.) 134, note; *Scott v. Myatt, supra*. The entry in the books of the seller is often of great importance, in determining, to whom credit was given. Being made by the seller, it is, of course, of much greater weight when against him, than when it sustains his claim. If, on production of the plaintiff's books, it appears that the defendant was not originally debited there, but that the goods were charged against the person receiving them, this fact, if unexplained by other circumstances, would be very strong, if not conclusive evidence, that credit was given to the person receiving the goods. *Storr v. Scott*, 6 C. & P. 241; *Hazen v. Bearden*, 4 Sneed, 48; *Leland v. Creyon*, 1 McCord, 100; *Matthews v. Milton*, 4 Yerger, 576; *Flanders v. Crolius*, 1 Duer, 206; 1 Parsons Contr. 499; Browne's Stat. Fr. § 198; 1 Smith's Lead. Ca. (m. p.) 134, note. But, as the question, to

whom, credit was given, must depend upon the intention of the parties, the fact that the goods are charged to the person receiving them, is not conclusive, but may be explained, and made consistent with the assumption of the defendant's primary liability. Other circumstances in the case may show (as was done in *Sanford v. Howard*, 29 Ala. 684, and *Hazen v. Bearden, supra*,) that the account was so kept for convenience, and to avoid confusion and misunderstanding; and that in point of fact the credit was given to the defendant, and he alone considered liable for the goods.—See, also, *Cutler v. Hinton*, 6 Rand. 509 ; *Loomis v. Smith*, 17 Conn. 115. On the other hand, if the defendant has been treated by the person selling the goods, and has himself acted as if he were the sole party liable, that, if not explained by other evidence, would be a circumstance conducing to show that his promise was not collateral. But it is impossible to specify any one fact, or set of facts, on which the question, to whom the plaintiff gave credit, is to be determined ; and the weight to which any particular fact may be entitled, must vary with the varying circumstances with which it may be found connected. Consequently, when there is any conflict of evidence upon the subject, the weight to be given to any particular circumstance should be left to the jury, who, in deciding the question, to whom the credit was given, should take into consideration "the extent of the undertaking, the expressions used, the situation of the parties, and all the circumstances of the case."—*Elder v. Warfield*, 7 H. & J. 391 ; *Hazen v. Bearden*, 4 Sneed, 48 ; Browne's Stat. Frauds, § 199.

As the judgment must be reversed for the errors before pointed out, and as what we have already said will probably furnish a sufficient guide for the conduct of the cause on another trial, we do not deem it necessary to examine particularly the other charges asked and refused, or the charges given and excepted to.

Judgment reversed, and cause remanded.