## FRANK S. LUSK et al.

### v.

## BEN. THROOP et al.

*Opinion filed February 20, 1901.*

1. STATUTE OF FRAUDS—*statute does not apply to original promise to pay for goods furnished third person.*  Under the Statute of Frauds a promise to pay the debt of another after the same is incurred is void, unless made upon a consideration and reduced to writing; but where goods are furnished to a third person at the request and upon the credit of the promisor, the undertaking is original and not within the statute.

2. SAME—*whether a promise is original or collateral is for the jury.* Whether a promise to pay for goods furnished to a third person is original or collateral is a question to be determined by the jury from all the circumstances of the case and under the instructions; and the finding of the jury in that regard, under proper instructions, is conclusive upon the Supreme Court.

3. SAME—*less rigid application of statute will be given where promisor receives a benefit.* If the original promisor receives a benefit from the supplying of goods to the party for whom he makes the promise, a less rigid application will be given to the Statute of Frauds than in a case where the promisor has no interest in the contract and receives no benefit therefrom.

4. SAME—*test in determining whether promise is original or collateral.* In determining whether a promise is original or collateral the test is whether the credit is given to the person sought to be charged, or to some one else.

5. SAME—*that goods are charged to person receiving them tends to show the credit was given to him.* That goods are charged upon the seller's books to the person receiving them, and not to the party at whose request they were furnished, is a fact which, if unexplained, tends strongly to show that credit was given to the party receiving the goods; but such fact may be explained, as where the promisor has a separate account and the charge is made to the party receiving the goods in order to avoid confusion.

6. SAME—*whether credit was given to party charged is always a question of intention.* Whether charging goods to the person receiving them proves that the credit was given to him, always involves the question of the intention with which the charge was made.

7. SAME—*when question of effect of taking notes and mortgages is for the jury.* Where the seller has taken notes and mortgages from the party to whom the goods were furnished, but did so at the request of the party at whose request the goods were furnished, the ques-

tion whether the taking of such notes and mortgages released the latter from his obligation to pay is to be determined by the jury.

8. INSTRUCTIONS—*instruction having no basis. in the evidence is properly refused.* An instruction is properly refused which presents the law applicable to a state of facts which there is no evidence in the record tending to prove.

9. SAME—*when instruction as to allowance of interest is proper.* In an action of assumpsit an instruction upon the plaintiff's right to interest is proper which conditions such right upon the belief of the jury, from the evidence, that the defendant promised to pay the plaintiff upon the 20th day of each month, and that the plaintiff presented monthly statements to the defendant, who promised from month to month to pay the same.

*Lusk* v. *Throop*, 89 Ill. App. 509, affirmed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of McHenry county; the Hon. CHARLES H. DONNELLY, Judge, presiding.

This is an action of assumpsit, begun on August 4, 1898, by appellees, Ben. Throop and William Pinnow, doing business under the firm name of Throop & Pinnow, against the appellants, Frank S. Lusk and D. D. Streeter, composing the firm of D. D. Streeter & Co., to recover the value of goods and supplies sold and delivered by appellees to the firm of Carlson & Olson, composed of Carl August Carlson and Andrew Olson, under an alleged agreement with the appellants, made prior to their delivery, to pay for the same. The declaration, filed on December 30, 1898, contains the usual common counts, setting forth that there is due from appellants to appellees the sum of $1297.77. A trial was had before the court and a jury, which resulted in a judgment in favor of the appellees and against the appellants for $1380.70. A motion for a new trial was made and overruled, and an appeal was perfected by appellants to the Appellate Court, where the judgment of the circuit court has been affirmed; and appellants prosecute their further appeal from such judgment of affirmance to this court.

The material facts are substantially as follows:   In 1897 appellants were constructing a line of railroad for the Chicago and Northwestern Railway Company in McHenry county under the firm name of D. D. Streeter & Co. A portion of such work of construction was sub-let by appellants to the firm of Carlson & Olson.   The appellees, Throop & Pinnow, were at that time merchants in the village of Nunda in McHenry county, conducting a general store.   The sub-contractors, Carlson & Olson, applied to appellees to obtain supplies for themselves and their employees, while they were carrying on the work of constructing said railroad.   The part of the road, which Carlson & Olson undertook to construct, was between the stations of Nunda and Ridgefield in said county.   After Carlson & Olson had gone to Throop & Pinnow to obtain credit for said goods, Pinnow and Throop went to the office of D. D. Streeter & Co. and had a conversation with Frank S. Lusk, the junior member of D. D. Streeter & Co., about extending credit to Carlson & Olson.   After said conversation, appellees proceeded to furnish and deliver to Carlson & Olson the supplies called for by them.

There is a conflict in the evidence as to the nature of the conversations, which took place between appellees and the appellant, Lusk, in reference to furnishing goods or supplies to Carlson & Olson.   Appellees claim, that Lusk told them to furnish Carlson & Olson with what groceries and supplies they wanted, and they, appellants, would pay for them; but appellants claim that Lusk told appellees that, if they allowed Carlson & Olson to have the supplies necessary for the men in their camp, he, Lusk, would see that they were paid for the same out of any moneys that might be coming to Carlson & Olson from appellants for work, performed by Carlson & Olson for appellants, before Carlson & Olson received any money themselves.

D. T. SMILEY, for appellants:

Where no special contract is declared on, but the declaration contains the common counts only, the plaintiff must prove a legal and binding contract, and the defendant may rely upon the Statute of Frauds without specially pleading the same. *Durant* v. *Rogers,* 71 Ill. 121; *Denton* v. *Jackson,* 106 id. 433.

The promise of a railway company to pay out of what it may become indebted to a contractor for work on the road, the sum that such contractor may owe a sub-contractor for work done, is clearly within the Statute of Frauds, and will be void if not in writing. *Laidlow* v. *Hatch,* 75 Ill. 11; *Frame* v. *August,* 88 id. 424.

Where the principal and the collateral contracts are made at the same time, the credit given, or the consideration passing between the principal parties, may be sufficient to sustain the collateral promise. But such a promise must be in writing. *Eddy* v. *Roberts,* 17 Ill. 507.

The Statute of Frauds requires that the promise to pay the debt of another shall be in writing, and the common law requires such promise to be based upon a sufficient consideration, else the promise is not binding. *Bacharach* v. *McCurrach,* 43 Ill. App. 584.

C. P. BARNES, FRANK R. JACKMAN, and F. B. BENNETT, for appellees:

The decision of the Appellate Court is conclusive upon all controverted questions of fact in this case, and this court can only review, on this appeal, questions of law. *Henry* v. *Stewart,* 185 Ill. 448; *Boyce* v. *Tallerman,* 183 id. 115; *Hight* v. *Walker,* 179 id. 209.

If appellants promised appellees to pay for such supplies and provisions as appellees might thereafter deliver to Carlson & Olson, the undertaking was original and not collateral, and appellants were liable on such promise. 3 Parsons on Contracts, (6th ed.) 21; Bishop

on Contracts, (enlarged ed.) sec. 1262; *Geary* v. *O'Neil*, 73 Ill. 593; *Owen* v. *Stevens*, 78 id. 462.

The goods in question were not charged to Carlson & Olson, but to keep other accounts of appellants separate from this they were charged to "Carlson & Olson and D. D. Streeter & Co." But even had the goods in question been charged solely to Carlson & Olson it would not be conclusive evidence that they were sold on the credit of Carlson & Olson. *Ruggles* v. *Gatton*, 50 Ill. 415.

The original promise may be valid and binding on the promisor and the person to whom the goods are delivered be also liable for the same. *Wickham* v. *Building Ass.* 80 Ill. App. 528; *Borchsenius* v. *Canutson*, 100 Ill. 82; Browne on the Statute of Frauds, (4th ed.) sec. 194.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

*First*—The first and second errors, assigned by the appellants, are that the trial court erred in refusing, at the close of the testimony of the appellees, and again at the close of all the evidence in the case, to direct a verdict in favor of the defendants below, the appellants here, in pursuance of a peremptory instruction to that effect, submitted by the appellants. The trial court did not err in refusing to instruct the jury to find for the appellants, if there was any evidence in the case tending to sustain the cause of action. (*Boyce* v. *Tallerman*, 183 Ill. 115).

If, before the delivery of any supplies and provisions by appellees to Carlson & Olson, the appellants promised appellees to pay for such supplies and provisions as appellees might thereafter deliver to Carlson & Olson, the undertaking of appellants was original, and not collateral, and appellants were liable on such original promise. The testimony of both of the appellees, and of another witness, tends to establish the making of such original promise by the appellants. It is true, that the testimony

of the appellant, Lusk, is in direct contradiction of the testimony, given by the appellees and their witness, and is to the effect that the appellants merely agreed to keep back from the money, earned by Carlson & Olson in the construction of the railroad, a sufficient amount to pay the bills of appellees, before Carlson & Olson should receive any money on their contract. The respective contentions of the appellees and of the appellants in regard to the nature of the agreement between them were submitted to the jury under the instructions of the court, and the jury found in favor of the appellees: that is to say, that appellants were liable as original promisors. Upon the questions of fact thus involved, the judgment of the circuit court in favor of the appellees, and the judgment of the Appellate Court, affirming such judgment of the circuit court, are conclusive; and the only questions, which this court can review upon the present appeal, are questions of law. (*Henry* v. *Stewart*, 185 Ill. 448; *Hight* v. *Walker*, 179 id. 209; *Boyce* v. *Tallerman, supra*).

Section 1 of the Statute of Frauds provides, "that no action shall be brought, whereby to charge * * * the defendant upon any special promise to answer for the debt, default or miscarriage of another person, * * * unless the promise or agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing," etc.   (2 Starr & Curt. Ann. Stat.— 2d ed.—p. 1990).   Appellants claim that, if they made any promise to pay for the goods which appellees might deliver to Carlson & Olson, such promise was verbal merely, and not in writing, and was, therefore, void under the Statute of Frauds. Undoubtedly, under the Statute of Frauds the promise to pay the debt of another, after the same is incurred, is void, unless made upon a consideration and reduced to writing. (*Durant* v. *Rogers*, 71 Ill. 121; *Denton* v. *Jackson*, 106 id. 433; *Laidlou* v. *Hatch*, 75 id. 11; *Eddy* v. *Roberts*, 17 id. 505; *Everett* v. *Morrison*, Breese, 79).   But where goods, money or services are fur-

nished to a third person, at the request and upon the credit of the promisor, the undertaking is clearly original, and in such case the Statute of Frauds does not apply. (*Geary* v. *O'Neil*, 73 Ill. 593; *Hughes* v. *Atkins*, 41 id. 213; *Williams* v. *Corbet*, 28 id. 262; *Blank* v. *Dreher*, 25 id. 331; *Owen* v. *Stevens*, 78 id. 462; *Hartley Bros.* v. *Varner*, 88 id. 561; *Schoenfeld* v. *Brown*, 78 id. 487; 1 Reed on Statute of Frauds, secs. 84, 86; 3 Parsons on Contracts,—8th ed.— marg. p. 21; Bishop on Contracts, sec. 1260; *Resseter* v. *Waterman*, 151 Ill. 169). In *Resseter* v. *Waterman, supra,* we said: "It may be said to be the settled rule that, where the agreement is original and independent, it is not within the statute; if collateral, it is." The rule is thus stated by Browne in his work on the Statute of Frauds, (4th ed. sec. 195): "If, for instance, goods are sold upon the sole credit and responsibility of the defendant, though delivered to a third person, there is no liability, to which that of the defendant can be collateral, and, consequently, it does not require a memorandum in writing." The Statute of Frauds says, that a promise to pay the debt of another must be in writing. Hence, when the promise is made, there must be an existing debt. If, for example, appellees had already delivered the supplies to Carlson & Olson, and, after such delivery, appellants had promised to pay for the same, then the promise would be to pay an existing debt due from a third person, and, hence, would come within the meaning of the statute. But, where the defendant promises the plaintiff to pay for goods, which the plaintiff may thereafter deliver to a third person, and which, at the time of the promise, have not been delivered, no debt exists from such third person to the plaintiff, and, hence, the promise of the defendant to pay is an original undertaking, and not merely a promise to pay the debt of another. (*Williams* v. *Corbet, supra*).

Whether or not the promise is original or collateral, within the definitions already given, is a question to be determined by the jury from all the circumstances of the

case, and under the instructions of the court. (*Ruggles* v. *Gatton*, 50 Ill. 412; *Resseter* v. *Waterman*, *supra;* 8 Am. & Eng. Ency. of Law,—1st ed.—pp. 677-679; *Geary* v. *O'Neil*, *supra; Moshier* v. *Kitchell*, 87 Ill. 18; Browne on the Statute of Frauds, sec. 199; 1 Reed on Statute of Frauds, secs. 85, 89, 91; *Boykin* v. *Dohlonde*, 37 Ala. 583). Inasmuch as the question, whether or not the promise in the present case was an original or a collateral undertaking, was a question for the determination of the jury, and was submitted to the jury under proper instructions, their finding in favor of the appellees is conclusive, so far as this court is concerned. At the request of appellants, the court instructed the jury that, if they believed from the evidence that the appellants did promise to pay for the goods in question, it was for them to determine from the evidence whether or not such promise was an original or a collateral undertaking.

*Second*—There was evidence, showing that the appellees charged the supplies delivered on their books under the heading of "Carlson & Olson and Streeter & Co." Appellants complain, that the second instruction, given by the trial court for the appellees, which had reference to these charges upon the books of appellees, was erroneous. That instruction told the jury that, when a third person promises to pay for goods that are thereafter to be delivered to another person, and the credit is thereby extended to such person so promising to pay for the same, and he is held for the payment of the same by the person so furnishing such goods, then such person is liable for the goods so delivered in pursuance of such agreement, irrespective of such charge upon the books of the person so furnishing same; and the instruction further told the jury that, if they believed from the evidence that the defendant, Frank S. Lusk, promised the plaintiffs, or either of them, that the firm of D. D. Streeter & Co. would pay the plaintiffs for such goods, groceries and supplies as they might thereafter furnish to Carlson

& Olson, and that the plaintiffs thereafter furnished to said Carlson & Olson the goods, groceries and supplies for which this suit is brought, and that the plaintiffs gave the credit to, and held, the defendants for the payment of the same, and intended to charge them with the same, then the defendants would be liable in this action, even though in plaintiffs' books the goods were charged to "Carlson & Olson and Streeter & Co." The fact, that the goods are charged upon the seller's books to the third person, to whom they are furnished, and the fact, that the bill for the goods is sent to such third person, are of importance in determining whether the liability of the promisor is primary or secondary, but such facts are not themselves conclusive upon the question. Undoubtedly, where the question involved is whether the promise is original or collateral, the test is whether the credit is given to the person sought to be charged, or to some one else. (*Geary* v. *O'Neil, supra; Schoenfeld* v. *Brown, supra;* 1 Reed on Statute of Frauds, sec. 85; Browne on Statute of Frauds, secs. 197*a*, 198; 8 Am. & Eng. Ency. of Law, p. 679).

If plaintiff's books show, that the defendant was not originally debited there, but that the goods were charged against the person receiving them, this fact, if unexplained by other circumstances, would be strong evidence going to show that credit was given to the person receiving the goods; (*Boykin* v. *Dohlonde, supra;*) but it is not conclusive evidence of such fact. (1 Reed on Statute of Frauds, sec. 90; *Ruggles* v. *Gatton, supra; Green* v. *Burton,* 59 Vt. 424; *Walker* v. *Hill,* 119 Mass. 249; *Boykin* v. *Dohlonde, supra*). In *Ruggles* v. *Gatton, supra,* we said: "And the fact, that they were charged to the persons who purchased them, is strong evidence that the credit was given to such persons, but is not conclusive. It might be rebutted by other evidence of a more convincing character, and this is a question for the consideration of the jury, to be determined from all the circumstances of the case."

In Reed's work on the Statute of Frauds (vol. 1, sec. 91,) it is said: "Where the entries in the books showed a charge against the third party, but the other evidence in the case an original liability on the defendant's part, it is a question for the jury."

Moreover, such a charge to the person receiving the goods may be made for the purpose of preventing confusion, where the promisor has bought goods on his own account, as well as made a promise to pay for goods delivered to another. (1 Reed on Statute of Frauds, sec. 91; *Hazen* v. *Bearden*, 4 Sneed, 49; *Boykin* v. *Dohlonde, supra*). In the case at bar, it appears that appellees had an account against Streeter & Co., the appellants here, for goods sold directly to them, and also an account against Lusk & Co., a firm, which seems to have been composed of the same persons who composed the firm of Streeter & Co. In addition to these accounts, the appellees had an account against Streeter & Co. for goods which they furnished at the request of Streeter & Co. to Carlson & Olson. Hence, the charge upon the books to "Carlson & Olson and Streeter & Co." of the latter account may have been for the purpose of convenience and to prevent the confusion of the different accounts. The charge, made against "Carlson & Olson and Streeter & Co." together, may have been for the purpose of identifying that account, and to prevent it being mistaken for the account against Streeter & Co. alone. For these reasons, we are of the opinion that the instruction complained of was not erroneous in telling the jury, that the charge against "Carlson & Olson and Streeter & Co." was not material, if they believed from the evidence that the appellees actually gave credit to the appellants.

The instruction in question is also complained of by the appellants, upon the ground that it uses the words "intended to charge them with the same." Appellants contend, that the intention of the appellees in regard to the matter was immaterial, and that, therefore, it was

error to call the attention of the jury to the question of intention. We do not think that the instruction was erroneous in this regard. "It is always a question of intention, whether charging the goods to the person receiving them proves that the credit was given him." (1 Reed on Statute of Frauds, sec. 91; *Green* v. *Burton, supra;* Bishop on Contracts, sec. 1260; 3 Parsons on Contracts,—8th ed.—marg. p. 21, and notes; *Boykin* v. *Dohlonde, supra; Sanford* v. *Howard,* 29 Ala. 691; 1 Reed on Statute of Frauds, sec. 96).

*Third*—The evidence in the case tends to show, that the delivery of the goods to Carlson & Olson by the appellees began in November, 1897, and that, under the arrangement with appellants, they were to be paid for upon the 20th day of each month. It appears from the evidence that, in the latter part of January, 1898, Carlson & Olson executed notes to appellees, and chattel mortgages to secure said notes, upon certain horses and harness, owned by Carlson & Olson, and used in their business. It is said, that these notes were given for the same indebtedness, which is here sued upon and sought to be recovered from the appellants; and the fact, that the notes and mortgages were given, is strenuously insisted upon as evidence that credit for the goods was given to Carlson & Olson, and not to appellants, and that appellees regarded Carlson & Olson as their debtors. The notes and mortgages were not executed by the firm of Carlson & Olson, but one note and mortgage were executed by Olson, and another note and mortgage were executed by Carlson, each giving his note and mortgage individually. These notes and mortgages were introduced in evidence by the appellants upon the trial below. When the notes became due, no effort was made to enforce the mortgages securing them. Complaint is made by the appellants, that the third instruction, given for the appellees, which calls attention to these notes and mortgages, was erroneous. That instruction told the jury that, if they believed from the evidence, facts and cir-

cumstances proven on the trial that the plaintiffs, in taking the notes and chattel mortgages from Carlson & Olson, did not intend thereby to release any claim they had against the defendants, if any claim they had, then the plaintiffs did not, by taking said notes and chattel mortgages, release any claim or indebtedness they had against the defendants, if the jury should find from the evidence they had any such claim.

The execution of these notes and mortgages presents a question in the case, whose solution is attended with much difficulty. The fact, that these notes and mortgages were taken is a strong circumstance, standing by itself, to support the contention of the appellants, but, upon a consideration of the whole case, we are satisfied that the court committed no error in leaving it to the jury to determine, whether the taking of the notes and mortgages amounted to a release of the claim of the appellees against the appellants as original promisors. The original promise of the appellants to pay for the goods to be furnished to Carlson & Olson was made, and the liability of appellants attached, long before the notes and mortgages were executed. If these notes and mortgages had been taken by the appellees upon their own motion, and independently of any action in reference thereto by appellants, we should say that the taking of them furnished strong evidence of a collateral, and not of an original undertaking on the part of the appellants; but the testimony in the case tends very strongly to show that they were taken by the appellees at the request of the appellants themselves. It seems, that the appellants had a bill of sale for the personal property mentioned in these mortgages, and that they released the personal property from their claim, founded upon the bill of sale, in order that they might be made subject to the mortgages in question. The appellees both swear, that the appellants requested them to take a mortgage upon this personal property, in order to prevent its being taken out of the

hands of Carlson & Olson. In view of this feature of the case, as disclosed by the testimony, it was for the jury to say, whether the taking of the notes and mortgages amounted to a release of appellants, the taking of them having been at the request of appellants themselves.

It has been held that, where the plaintiff presented his account for payment to the party answered for, such presentation would be strong evidence that credit was given to such person, and that the defendant's promise was a mere guaranty, but that even this can be explained by proof, that the account was so presented at the defendant's request. (1 Reed on Statute of Frauds, sec. 91, and notes).

In *King* v. *Despard*, 5 Wend. 278, the Statute of Frauds was held not to apply, although the plaintiff had drawn drafts upon the party answered for. In *Hazen* v. *Bearden*, *supra*, the facts showed that goods were sold and delivered at the request of the defendant to another upon the promise of the former to be liable therefor, and that the account was rendered against the other party and presented to him for collection; and it was there held that, although this furnished strong *prima facie* evidence that the credit was given to such other person, yet it might be explained by proof, so as to render it consistent with the hypothesis of the defendant's primary liability; and it was there further held that the fact, that such account was so rendered at the request of the defendant and for his benefit, might be considered by the jury for what it was worth in explanation thereof.

In *Leisman* v. *Otto*, 1 Bush, 225, where eighty barrels of beer were sold by the appellee to one Muhling on the credit of the appellants, and delivered at the instance of appellants, and only on their promise to pay the price, and their direction to charge it to them, which appellee accordingly did, it was held that the promise of appellants was the consideration for the delivery and was an original promise to pay their own debt; and it there

appeared, that the appellee subsequently attached the goods as belonging to Muhling, but the court held that such attachment did not show, that appellee did not consider the appellants originally liable as principals; it is there said: "That proceeding was reluctantly instituted at the urgent request and for the sole benefit of the appellants against the appellee's first spontaneous resolution, and against the advice of his counsel."

In the case at bar, the proof tends to show that the appellees presented the bill for the goods on the 20th of each month to appellants, and not to Carlson & Olson, and that several payments were made to appellees by appellants. If, where the plaintiff relies upon the original promise of the defendant to pay for goods furnished to a third person, the presentation of the bill for such goods to the third person, and the commencement of an attachment suit for the amount due on account of the goods against such third person, do not necessarily establish a release or discharge of the liability of the original promisor, then we think it was proper to leave it to the jury to say in the present case, whether or not the taking of the notes and mortgages in question amounted to a release.

It is to be observed, also, that, in this case, the appellants were to receive a personal benefit from the furnishing of the goods to Carlson & Olson. Appellants were constructing the section of a railroad for a railroad company, and had sub-let a portion of the road, which they had thus agreed to construct, to Carlson & Olson, so that the performance of their own contract with the railroad company depended, to a certain extent, upon the performance of Carlson & Olson's contract with them. Therefore, the furnishing of supplies to Carlson & Olson, in order to feed the forty or fifty men who were at work for them in their camp, was indirectly a benefit to the appellants, inasmuch as it enabled Carlson & Olson to go on with the performance of their contract with appel-

lants.    Where the original promisors, in such a case as
this, receive a benefit from the supplying of the goods to
the third person for whom they make the promise, a less
rigid application will be given to the Statute of Frauds
than in a case, where the original promisor has no interest
in the contract or receives no benefit growing out of it.
(*Schoenfeld* v. *Brown, supra;* Browne on Statute of Frauds,
secs. 200*a*, 212, 214; 1 Reed on Statute of Frauds, sec. 92;
*Clifford* v. *Luhring*, 69 Ill. 401; 8 Am. & Eng. Ency. of Law,
pp. 680, 681).

For the reasons above stated, we are of the opinion
that the third instruction, given for the plaintiffs, is not
erroneous in the respects thus indicated.

*Fourth*—Appellants claim that, inasmuch as the charge
upon the books of appellees was against "Carlson & Ol-
son and Streeter & Co.," appellees relied both upon the
responsibility of Carlson & Olson and the promise of the
appellants, and that, in such case, the promise is collat-
eral, and not original.    The contention of the appellants
seems to be, that credit was given both to the appellants
and to Carlson & Olson jointly, and that, where such is
the case, the promise is collateral.    The authorities upon
this question seem to be somewhat in conflict.    (*Swift* v.
*Pierce*, 13 Allen, 136; 8 Am. & Eng. Ency. of Law, p. 679;
1 Reed on Statute of Frauds, secs. 85, 87).    We express
no opinion upon the effect of making a charge upon the
books of the plaintiff against the original promisor and
the third person jointly.    It is sufficient to say in this
case, that the court below gave an instruction in behalf
of the appellants, presenting to the jury their theory
upon this subject, and, therefore, the appellants cannot
complain.    By the third instruction given at the request
of the appellants, the court told the jury that if, after
considering all the evidence, facts and circumstances
proven, they believed from the evidence that the credit
was given to Carlson & Olson and D. D. Streeter & Co.
jointly, the plaintiffs could not recover.    Whether this

was a correct statement of the law or not,.appellants had the benefit of the statement in the instruction so given.

*Fifth*—Complaint is made, that the court admitted in evidence an unsigned paper which was drawn up by the appellants, or by an attorney employed by the appellants, and presented to the appellees for signature, but which the appellees refused to sign. This paper bore date January 24, 1898, being the day on which the notes and chattel mortgages heretofore referred to were executed. It recited, that certain teams and harness, which had theretofore been pledged by Carlson & Olson to the appellants for the fulfillment of their contract with appellants, had been released by appellants. This paper cannot be regarded as a mere offer of compromise by the appellants to the appellees, because, at the time it was presented for signature, no difference appears to have arisen between appellants and appellees, and there is no evidence that it was intended as a compromise. It simply tended to confirm the statement of appellees, that the horses and harness were mortgaged to appellees at the request of appellants, because it showed that these same horses and harness were released by appellants, in order to be made subject to the mortgages in question. The paper in question, also, as is said by the Appellate Court in their opinion, "tended to show a recognition of liability on the part of appellants to appellees." Hence, there was no error in allowing it to go to the jury for their consideration.

*Sixth*—Appellants also claim, that the trial court erred in refusing to give the seventh instruction asked by the appellants. This instruction told the jury that, if they believed from the evidence that the appellees retained an option as to whether they would look to Carlson & Olson for their pay for the goods in question, or to the appellants, then the plaintiffs could not recover in this action. This instruction was properly refused, because there was no evidence upon which to base it. We find no

testimony in the record, indicating in any way that the plaintiffs retained any option as to whether they would look to Carlson & Olson or to appellants.

*Seventh*—Appellants also complain that the court be-. low erred in refusing to give the eighth instruction asked by them. That instruction is as follows:

"The court instructs the jury as a matter of law that any statement made by counsel for plaintiffs in his opening statement to you about what the evidence would show, is as binding upon these plaintiffs, as if the plaintiffs themselves had made such statement, and, as such, should be considered by you in making your verdict."

This instruction was properly refused. In *De Wane* v. *Hansow*, 56 Ill. App. 575, it was said: "While the office of a jury statement is to enlighten the jury upon the issues involved, so as to prepare their minds for the evidence to be heard, and the attorney making it should confine himself to the proposed proofs, and make it sufficiently full for their understanding of the case, the plaintiff is not confined to the facts recited in the statement." Thompson in his work on Trials (vol. 1, sec. 267,) says: "Counsel is not confined in the introduction of evidence to the statement which he makes in the opening of his case, since this would oblige him at his peril to announce to the jury each item of evidence which he intended to introduce."

*Eighth*—Complaint is also made by appellants, that the trial court gave on behalf of the appellees the fourth instruction, which was given for them. This instruction related solely to the question of the right of appellees to recover interest. Such right was conditioned by the instruction upon the belief of the jury from the evidence, that appellants promised to pay appellees upon the 20th day of each month. The instruction told the jury that, in case they found that appellees were entitled to recover, and further found that the monthly statements were presented to appellants, and that appellants promised from month to month to pay the same, then, in that case,

appellees were entitled to five per cent interest on said monthly statements. We cannot see that the instruction was objectionable. It first required the jury to find the existence of a contract, and of all things necessary to enable appellees to recover, and then, in case the jury did so find and also found the other facts mentioned in the instruction, appellees were entitled to five per cent interest on the said monthly statements.

We find no error in the record, which would justify us in reversing this judgment. Accordingly the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*