## A. J. Yawger, et al., v. F. C. Backs.

1. STATUTE OF FRAUDS—*when written promise established.* Held, that certain correspondence set out and referred to in the opinion sufficiently established a written promise so as to take it out of the Statute of Frauds.

2. BILL OF PARTICULARS—*when omissions in, immaterial.* An omission in a bill of particulars of a matter well known to the defendant is immaterial.

Attachment proceeding. Appeal from the Circuit Court of Madison County; the Hon. CHARLES T. MOORE, Judge, presiding. Heard in this court at the August term, 1904. Affirmed. Opinion filed March 17, 1905.

SPRINGER & BUCKLEY, for appellants.

W. P. EARLY and D. G. WILLIAMSON, for appellee.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

This suit was in attachment, brought by appellee against appellants, to recover an indebtedness alleged in the affidavit of attachment to amount to $1,805.79. A declaration in assumpsit upon the common counts, was filed and appellants pleaded the general issue. The jury returned a verdict in favor of appellee for $1,805.79, but a remittitur of $63.14 was entered by appellee, and judgment given for $1,742.65. Appellants admitted an indebtedness of $876.57 and made a tender of that amount.

They contend that the verdict for a greater amount was contrary to the law and the evidence; that the court erred in the admission of certain evidence and in giving certain instructions for appellee.

The proofs showed that appellants were railroad contractors and during the spring and summer of 1903, were working for the Chicago, Indianapolis & St. Louis Short Line Railroad Company, being engaged in constructing some concrete arches over Cahokia creek on said railroad, near a place called Carpenter in Madison county, Illinois,

and for the purpose of such construction had at that place a large quantity of machinery and materials.

Appellants' headquarters were at Indianapolis, Indiana, and while appellant Yawger visited the place where the work was being carried on frequently, the work itself and the men employed upon the same, were in charge of a foreman. At this station appellee, with the assistance of two sons, carried on a general store. In April, 1903, appellants made arrangements with appellee to furnish supplies and cash time checks issued by them on account of the men employed in the work. It was part of the arrangement that the amount which appellee paid out for time checks and charged for supplies, during one month, should be paid him by appellants on the 25th of the next month. This arrangement was continued under the different managers had by appellants through several months, and was duly recognized by appellants and the accounts settled in accordance therewith until September 25, 1903, at which time there was due the sum of $876.57 for supplies purchased and time checks and orders paid during the month of August, and also a balance from a former account which should have been paid August 25. The latter amount appears to have been afterwards satisfied, but the amount due in September, $876.57, is still unpaid, though not in dispute by appellants, and is a part of the judgment in this case.

About July 16, 1903, one C. J. Welch was put in charge of the work. Welch brought no property, machinery or materials with him but used that furnished by appellants, the agreement being, as claimed by appellants, that they should furnish the material and machinery and Welch do the work.

After Welch took charge appellee continued as before to furnish supplies and pay time checks, until, as he claimed, the amount of $1,805.79 was due him. The whole of this amount was for checks and orders paid and supplies furnished prior to October 1, 1903, except $63.14. The latter amount was remitted from the verdict as above stated,

so that the judgment was only for the amount claimed to be due up to October 1.

The account for supplies furnished after Welch took charge of the work was first carried on appellee's book under the name of "C. J. Welch, contractors," and afterwards the names of Yawger and Battefeld were placed under his name and over the account.

It is claimed by appellants that Welch was an independent subcontractor, doing work on his own account and that they never promised appellee to pay for supplies furnished Welch or to take up the checks and orders issued by him; that a promise on their part to pay such indebtedness would be a promise to pay the debt of another and to be binding must be in writing, under the Statute of Frauds.

On September 21, 1903, appellee wrote appellants in regard to the Welch account, orders and time checks, stating the amount then due, part of which was the August account of $876.57 above referred to, calling attention to an alleged conversation with appellant Yawger and continuing as follows: "Mr. Yawger's proposition was that he would stand good for anything Mr. Welch might get from us on or before October 1, 1903, and at the end of that time renew arrangements, in view of the favor we were to carry one-half amount due September 25th until October 25th balance of amount now due to be paid promptly. Please let us hear from you in regard to this as we want to do business on the square plan and aim to treat you right. Please make this agreement in writing." The next day appellants wrote appellee, "Yours under date of 9-21-03 at hand and noted. We will deduct from Welch this month the amount due Aug. 25th as shown in your letter and will deduct the amount shown due September 25th next month. If this is satisfactory please advise." Appellee wrote in reply that the arrangement mentioned was satisfactory. William Backs, son of appellee, testified that on October 2, Mr. Yawger called him up over the long distance telephone from Indianapolis, and told

him not to get uneasy about the checks they had cashed, they were alright and he was good for them; that on October 8, Mr. Yawger came personally and took witness in his carriage down to the works and had witness check up with Mr. Welch and told Welch to bring the accounts to Litchfield that evening; told witness that the checks in his hands up to that date were alright and would be paid by him; that the amount which witness then had in his hands not including the October account amounted to $1,742.58. October 9 appellants wrote appellee sending a check of $131.40 to pay some time checks which appellee had refused to cash for the men in his vicinity with the request that he pay the checks and return them to appellants and saying, "We will see that Mr. Welch's time checks are paid on regular pay day in October, if you refuse to handle them." On October 17 appellants wrote: "We wish to notify you that you need not cash any of our time checks or any of C. J. Welch's in the future."

Appellants were financially interested in having the work which Welch was then conducting completed. Mr. Yawger himself testified that he asked him, appellee, to pay off some men Mr. Welch had discharged "as a favor to Mr. Welch and the works generally and to myself to have the work going on, of course."

We are very much inclined to the opinion that when the correspondence between the parties as above set forth is considered together, it shows a written promise on the part of the appellants to pay appellee for the supplies furnished and the checks and orders cashed by him during the time in controversy. But whether or not there was such a written promise is not controlling in this case, as there was evidence tending to show an oral promise to pay such claims both at the time when Welch first came to the works and afterwards.

In the case of Lusk v. Throop, 189 Ill. 127, which was somewhat similar to this case, appellees in that case having furnished supplies to certain subcontractors at work upon a line of railroad upon the promise of appellants who were

the original contractors that they, appellants, would see that appellees were paid for the same, the court says: "Where the original promisors in such a case as this receive a benefit from the supplying of the goods to the third person for whom they make the promise, a less rigid application will be given to the Statute of Frauds than in a case where the original promisor has no interest in the contract or receives no benefit growing out of it." And also "Where the defendant promises the plaintiff to pay for goods which the plaintiff may thereafter deliver to a third person, and which at the time of the promise have not been delivered, no debt exists from such third person to the plaintiff and hence the promise of the defendant to pay is an original undertaking and not merely a promise to pay the debt of another. Whether or not the promise is original or collateral within the definitions already given, is a question to be determined by the jury from all the circumstances of the case, and under the instructions of the court."

There is proof in the record that before Mr. Welch went to work Mr. Yawger brought him in to see appellee and told the latter that Welch would take charge of the works and be his representative. If Welch was simply placed in charge of the works by appellants as their representative, and continued to prosecute the work for them, his acts in purchasing supplies and issuing checks to the men for their labor, would be binding upon appellants to the same extent as if the acts were done by them. As there is evidence tending to show a promise on the part of the appellants before Welch undertook the work, to pay appellee for supplies which he might furnish Welch and for time checks issued by him and also evidence to show that Welch was acting as the representative of appellants, and not as an independent subcontractor, we cannot disturb the verdict of the jury finding the facts in favor of appellee.

The objection to the admission of evidence is that the court permitted appellee to show transactions between appellants and him prior to the time goods were sold to

Welch or time checks .cashed for him, and also that appellee was permitted to show the amount due on the Welch time checks, while the bill of particulars set forth Yawger and Battefeld time checks. As there was evidence tending to show that Welch was acting simply as the representative of appellants, we think the court properly permitted evidence showing what the course of business had been between appellee and appellants' representatives prior to said time.

The bill of particulars did not in fact state that the time checks were issued by appellants Yawger and Battefeld, but that the indebtedness was due from them to appellee and mentioned time checks among the items of indebtedness without specifying by whom they were issued. This was immaterial as the evidence shows that the manner of issuing the time checks was well understood between the parties to the suit, the only question being as to whose obligations they were.

The objection made to several of the instructions given for appellee is, that they authorized a recovery in case the jury found that the merchandise was furnished and the time checks cashed under a verbal agreement on the part of appellants to pay the same, without specifying the time at which such promise should have been made to make it legally binding upon appellants.

We are of opinion that the instructions taken together, clearly told the jury that in order to bind appellants upon a verbal promise, it must have been made before the goods were furnished or the checks cashed, and the court did not err in giving them.

The judgment of the court below will be affirmed.

*Affirmed.*