## Lyman D. Brown, Defendant in Error, v. G. H. Reinberger, Plaintiff in Error.

### Gen. No. 18,081.

1. CORPORATIONS—*promise of stockholder to pay debt of corporation.* The promise of a stockholder to pay an existing account of his corporation is collateral and not original.

2. STATUTE OF FRAUDS—*original or collateral promise.* Where the question involved is whether a promise is original or collateral, the test is whether credit is given to the person sought to be charged or to some one else.

3. STATUTE OF FRAUDS—*where a credit is given corporation.* Where credit is given a corporation upon the promise of a stockholder to pay, the promise is collateral.

Error to the Municipal Court of Chicago; the Hon. ARNOLD HEAP, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1912. Reversed with finding of. fact. Opinion filed February 11, 1913. Rehearing denied February 25, 1913.

CLARK, P. J., dissenting.

HARRIS F. WILLIAMS, for plaintiff in error.

ELDRIDGE & ROSE, for defendant in error.

MR. JUSTICE BARNES delivered the opinion of the court.

On a trial before the court without a jury plaintiff (defendant in error) recovered a judgment against defendant (plaintiff in error) for $444.65, the balance due him for goods shipped in August and October, 1909, to the Illinois Garter Company in Chicago. Prior to contracting for such goods—in May according to plaintiff, in January as claimed by defendant—the latter, who was one of the officers and principal stockholders of said company, had a conversation with plaintiff in New York relative to extending the company further credit.

Plaintiff, testifying to the substance of such conversation, said: "He (Reinberger) said they had to have the goods, and he said to me, 'Now, Brown, if you will send us more goods, I will see that you are paid in any event for any goods that you may send, and I am worth $5,000,'" and testified that such conversation was had after refusal of the company to pay a draft of which he advised it by letter of May 7th.

Defendant testified that he neither was in New York nor saw plaintiff between January and August; that the conversation was in January and that he merely promised to pay the account the company then owed, and introduced a letter from himself to plaintiff, under date of January 20th, in which he said:

"You will remember the writer told you when in New York last, that he would personally stand good for the account that we owe you now. He again promises that he will personally pay your account that is owing now in the event the firm should not. I put this in this form that it will be a guarantee to you against any loss. * * * As stated above, I will personally guarantee the payment of your account if you will carry us along until I get this contract with A. F. & Co. signed up and realize some money on it."

While plaintiff's evidence was in the form of a deposition and he had no opportunity to question this letter,

yet there is no intimation in the record of surprise or
that it was not a genuine letter, or that there was more
than one conversation on the subject. If, therefore,
said letter states the oral promise correctly, then it
not only was given prior to January 20th, but limited
to the account the company then owed. If it did not
state it correctly and plaintiff did not intend to accept
such written construction of it, then assuming, as we
must, that he received the letter, his failure to reply
to it in connection with his making additional ship-
ments to the company in February and April follow-
ing, is not susceptible of reasonable explanation from
his point of view. If he received the letter, then it is
significant that he omitted to refer to it. He offered in
evidence another letter from defendant in Chicago
under date of May 8th, acknowledging said letter of
May 7th, from New York, and saying:

"We note that you have drawn on us. We beg to
advise you that we had already sent you a check cov-
ering bill of Feb. 4th, though we had only deducted
5%. We are sending you a check covering the $67.00
bill and are deducting therefrom the 2% which we
failed to deduct from the other invoice.

"The writer is surprised at your threats to place our
account for collection. * * * You understand
the condition of our finances and know that we are
a little slow. You also know that the writer told you
that he would see that you would not lose anything on
this account under any circumstances."

The words "this account" are relied upon by plain-
tiff to corroborate his version of the conversation, but
the letter is more consistent with defendant's version
of both the time and substance of the conversation, for,
first, it refers to a conversation which in the nature of
things must have been prior and not after May 7th as
plaintiff contends, and, second, assuming, as we must,
that it refers to the same conversation as does the let-
ter of January 20th, we must conclude that the letter of
May 8th referred to the account spoken of in January
when the debt was $500.16, and on which there was a

balance still due on May 8th of $203.14. In the meantime there were both debits and credits, but while the payments were sufficient to liquidate an additional indebtedness of $497.02, they did not at any time reduce the balance of the January account below $203.14. If reading the letter of May 8th by itself there is any ambiguity as to the meaning of the words "this account," it seems plain that when taken in connection with the above facts and circumstances they refer to the account spoken of in a conversation had in January, the construction of which as given in the letter of January 20th plaintiff is in no position to question. There is no room for construing these words to refer to an account continuing after the time of such conversation, or to any other account than that explicitly referred to in the letter of January 20th.

This balance of $203.14 was shortly afterwards liquidated and there were no more transactions between plaintiff and said company until the following August when defendant was again in New York and a new account was opened, for which plaintiff seeks to hold defendant responsible by virtue of the oral promise in controversy. We think the finding of the court in his favor was plainly against the preponderance of the evidence.

If the promise referred to an existing account it was unquestionably one to pay the debt of another—that of a stockholder to pay the debt of his corporation, and, therefore, a collateral one. Home Nat. Bank of Chicago v. Waterman's Estate, 134 Ill. 461.

The claim that the promise was original is not only inconsistent with the facts aforesaid, but with the fact that the credit was given to the corporation and not to defendant, which strongly tends to show that the promise was collateral. Lusk v. Throop, 189 Ill. 127. In determining whether a promise is original or collateral, the test is whether credit is given to the persons sought to be charged or to some one else. Lusk v.

Throop, *supra;* Geary v. O'Neil, 73 Ill. 593. We think there can be no doubt that the promise was collateral and was a guaranty of the debt subsisting January 20th, which was paid and that defendant was not personally liable for subsequent accounts.

The judgment will be reversed.

*Reversed with finding of fact.*

MR. PRESIDING JUSTICE CLARK dissenting: I think there was enough evidence in the case to warrant the trial court in reaching the conclusion that there was an original undertaking on the part of the defendant to pay for the goods afterwards shipped to the corporation he controlled, and that there should not be a reversal of the finding of the trial judge based upon the proposition that it was manifestly against the weight of the evidence.

In so far as the oral testimony is concerned, the trial judge was in a much better position to determine its credibility than are we. The judgment should be affirmed.