## Bonner & Marshall Company, Appellee, v. Ernest F. Hansell, Appellant.

### Gen. No. 19,945.

1. FRAUDS, STATUTE OF, § 2*—*when oral promise to answer for debt of another within statute.* The provision of the statute of frauds, J. & A. ¶ 5867, requiring a promise to answer for the debt of another to be in writing, applies to promises, the main purposes of which are to assume or guaranty the debt of another, and does not apply to promises, the object of which is to promote some interest or purpose of the promissor.

2. FRAUDS, STATUTE OF, § 2*—*when oral promise to pay debt of another sufficiently evidenced by writing.* An oral promise of an agent of the owner of a building to see that a party furnishing brick to the original contractor was paid, *held* to constitute a collateral promise to pay the debt of another, but a letter written by the owner and signed by him, *held* to constitute a sufficient "note or memorandum" in writing to meet the requirements of the statute of frauds.

3. FRAUDS, STATUTE OF, § 126*—*evidence admissible to show collateral promise.* Where a party promises to pay for goods furnished another, the fact that the latter was charged on the books of account for the same is evidence that the promise was collateral, but such evidence is not conclusive and may be rebutted and explained.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

4. FRAUDS, STATUTE OF, § 122*—*when statement of claim based on collateral promise.* In an action against the owner of a building for materials furnished to a building contractor, the averments of plaintiff's statement of claim construed as basing the right to recover on a collateral promise of defendant to pay rather than an original undertaking.

5. APPEAL AND ERROR, § 438*—*when objection to variance cannot be considered.* The question of variance between the statement of claim and the proof cannot be raised on appeal where the alleged variance was not specifically pointed out in the trial court.

6. APPEAL AND ERROR, § 522*—*sufficiency of objection to variance.* An objection for variance between statement of claim and proofs must be in such terms that the court may understand that the question of variance is raised.

7. EVIDENCE, § 361*—*when evidence to show meaning of words inadmissible.* Refusal to permit a party to show that the word "protect" as used in an agreement, had a particular meaning among architects and material men, *held* not error where it appeared what the parties meant by the use of the word, and it also appeared that when the objection to the evidence was sustained no offer was made to prove that the word had a meaning different from its ordinary meaning.

8. EVIDENCE, § 80*—*when declarations of agent part of res gestae.* In an action against an owner of a building to recover for materials furnished a building contractor, admissions made by the architect after the defendant had written letters to plaintiff concerning payment, *held* admissible as part of the *res gestae*, it appearing that no payment had been made up to that time and that the architect was still acting as defendant's agent.

9. WITNESSES, § 279*—*when impeaching evidence may be refused.* Refusal of court to permit impeaching evidence to be introduced, *held* not error where the witnesses sought to be impeached admitted what was sought to be introduced.

10. APPEAL AND ERROR, § 452*—*when objection to admission of documentary evidence not preserved for review.* The admission of a copy of a letter in evidence cannot be urged as error, for the reason no notice to produce the original was shown, where no such objection was made in the trial court.

Appeal from the Municipal Court of Chicago; the Hon. FREDERICK L. FAKE, Judge, presiding.   Heard in the Branch Appellate Court at the October term, 1913.   Affirmed.   Opinion filed November 19, 1914.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

**Statement by the Court.** Appellee recovered a judgment against appellant in the Municipal Court for $1,402.13, upon a statement of claim reading as follows:

"Plaintiff's claim is as follows: Cox Brothers, mason contractors in the erection of improvements for the defendant, Ernest F. Hansell, upon the premises hereinafter mentioned, ordered the plaintiff on or about August 1, 1911, to deliver about 60,000 brick at $22 per M to the premises at Sheridan road and Margate terrace owned by the said defendant, E. F. Hansell. Plaintiff then and there refused to deliver the said brick on the credit of said Cox Brothers, and thereupon, on or about August 7, 1911 (and on divers days subsequent thereto), one Frank M. Pray, as agent for the defendant, Ernest F. Hansell, agreed with the plaintiff to see that the plaintiff would be paid for all brick so delivered and to be delivered as aforesaid. That relying on said promises, the plaintiff delivered to said Cox Brothers on their order 60,000 brick at $22 per M.

That subsequently thereto, and on to wit, November 13, 1911, the defendant in writing acknowledged said undertaking and agreement, and then and there contracted and agreed to pay the plaintiff the said sum of $1,320, no part or portion of which sum has ever been paid."

The affidavit of merits filed by appellant denied *seriatim* each of the allegations of fact in appellee's statement of claim, and averred, "as a further defense," that the agreement mentioned in the statement of claim "is a promise to answer for the debt, default or miscarriage of another, to-wit: Cox Brothers, and that the said alleged agreement is not evidenced by a writing as required by statute."

The evidence introduced on behalf of appellee tends to prove that in the summer and fall of 1911, appellant was the owner of a tract of ground at the location mentioned in the statement of claim, upon which he was erecting an apartment building; that Frank M.

Pray was his architect; that Pray prepared the plans and specifications let the contracts and superintended the work; that as the work progressed appellant placed in the hands of Pray various sums of money, aggregating about $20,000, with which to pay the contractors; that without further directions from appellant, Pray paid out this money, from time to time, to such contractors as, in his judgment, were entitled to it; that about August 1, 1911, Pray called at the office of appellee, whose business is the manufacture and sale of brick, said he was erecting a building for a man named Hansell, asked if appellee "had anything that cost about $20 or $22," was given some samples, which he took away, saying he would submit them to appellant; that a day or two later, he returned and said to appellee's salesman: "That is the brick we are going to use," indicating a sample, the price of which was $22 a thousand; that the salesman asked who the contractors were; that Pray replied: "Cox Brothers," whereupon the salesman said that they were irresponsible and that appellee had an outstanding account against them that remained unpaid; that Pray replied that he was acting as appellant's agent, and would "guarantee Mr. Hansell's account and see that it was paid," and directed the salesman to go to Cox Brothers to ascertain the quantities desired, the manner of delivery, etc.; that soon after and before any brick were delivered, Charles Bonner, the president of appellee, called up Pray on the telephone and told him that appellee had an order from Cox Brothers for brick to be delivered to Margate terrace, that he did not consider them financially responsible and "would like some guarantee" of the account; that Pray replied that he "would see that the account was protected and paid;" that after these conversations with Pray, appellee delivered 60,000 of the brick to Cox Brothers, charged the amount of the same in its account books to Cox Brothers and

sent bills for the same from time to time to Cox Brothers; that these bills were not paid, and on November 11, 1911, appellee wrote to appellant calling attention to the fact that it had furnished the brick for appellant's buildings to Cox Brothers, and concluding as follows:

"There is due us on account of this delivery, the sum of thirteen hundred and twenty dollars ($1,320). This account is all due. A portion of it, past due.

I might state the financial standing of Cox Brothers is none too good, and unless we can get protection from you as owner, we will be obliged to protect ourselves by lien on the buildings. Kindly let us know at once, the protection we may expect.

Your architects, Messrs. F. E. Pray & Son, have before delivering these goods, stated that they would see our account was secured; but we do not wish to lose our lien rights, and would ask that you write us, guaranteeing this amount.

Most truly yours,
(Signed)    Bonner & Marshall Company."

To this letter appellant replied as follows:

"Chicago, Ill., November 13, 1911.

"Bonner & Marshall Co.,

Gentlemen:

Yours of the 11th in reference to your claim of $1,320, against Cox Brothers for material delivered to them for my building at Sheridan road and Margate terrace is received and in reply will say that your claim will be fully protected. Mr. Frank M. Pray, the architect, has full charge and is paying out all the bills. His office is with F. E. Pray & Son. He will take care of and protect you in any claims you have on account of this job.

Yours very truly,
Ernest F. Hansell."

At the close of the plaintiff's evidence, appellant moved to instruct the jury to find for the defendant "upon the ground that the evidence shows that there was no original undertaking, but a collateral undertaking, void under the statute of frauds, and on the

further ground that there has been no evidence showing that Frank M. Pray had any authority to bind the defendant in relation to the matters testified to." This motion was denied and an exception preserved.

On behalf of appellant, Frank M. Pray testified that he went to appellee's office to make a selection of brick; that he inquired the price and told the salesman "we are figuring with a concern named Cox Bros." He denied that he said anything to the salesman at any time "about guaranteeing the account" or "about protecting or paying" for the brick. He admitted that he had a conversation with Bonner over the telephone, but claimed this was after most of the brick had been delivered, and denied that he ever told Bonner that he would guaranty appellee's account. He testified, however, that he also had a talk with Bonner in September, in which Bonner had requested payment for the brick, that his reply was that he did not have any money at that time, but that he had taken a "contractor's statement" from Cox Brothers, in which appellee was "mentioned" for the sum of $1,200 or $1,300. During the examination of this witness he was asked: "Has the word 'protect,' according to the usage and customs of the architects and material men, any particular meaning?" An objection to this question was sustained, and the question was not answered.

The evidence on behalf of appellant also tended to prove that the written contract of Cox Brothers with appellant required them to do the mason work on appellant's building, and provide all materials for the same, "and deliver same free from mechanic's liens or claims arising out of the performance of this contract," that notwithstanding this provision in the contract of Cox Brothers, appellee, in November, 1911, served on appellant a formal notice stating that it had been employed by Cox Brothers to furnish brick for appellant's buildings under their contract, that

there was due it $1,320 for the same, and that appellee would hold the buildings and appellant's interest in the ground, liable therefor; and that in February, 1912, appellee filed its bill in the Superior Court seeking to establish a mechanic's lien upon appellant's property.

Appellant's evidence further showed that in October, 1911, appellee wrote to Cox Brothers requesting them to give appellee "an order on the architect," and later in the same month wrote to the architect stating that Cox Brothers had failed to give appellee such an order, and requesting the architect "to have check made for the amount to Cox Brothers and endorsed by them to ourselves."

EDWIN TERWILLIGER, JR. and EDWARD D. PRAY, for appellant.

EDMUND W. FROEHLICH, for appellee.

MR. PRESIDING JUSTICE FITCH delivered the opinion of the court.

The main contentions of appellant upon this appeal may be stated as follows: Appellee's statement of claim sets up an original undertaking, while the evidence shows only a collateral promise on the part of appellant, through his agent Pray, to answer for the debt of Cox Brothers; that appellant is not liable in this action upon the promise of Pray, first, because there is a variance between the allegations and the proofs; second, because Pray had no authority to make such a promise on behalf of appellant; and third, because the promise of Pray, even if made by him and authorized by appellant, was but an oral promise to answer for the debt of Cox Brothers, and therefore void, under the statute of frauds.

It is well settled that the portion of the statute of frauds which is relied on by appellant has reference

only to collateral undertakings to answer for the debt or default of another. "Where the agreement is original and independent, it is not within the statute; if collateral, it is." *Resseter v. Waterman,* 151 Ill 169; *Lusk v. Throop,* 189 Ill. 127. The terms "original promise" and "collateral promise" are not used in the statute, but have been adopted by the courts as a convenient method of expressing the distinction between cases in which the direct and leading object of the promise is to promote some interest or purpose of the promisor, and cases in which the main purpose of the promise is to assume or guaranty the debt of another. Smith on the Law of Fraud, sec. 317. In any case within the former class, the promise is original and is good whether oral or in writing, even though the effect may be to release or suspend the debt of another. In any case within the latter class, the promise is collateral to the obligation of another, and is void by the terms of the statute unless it, or some note or memorandum of it, is in writing and signed by the party to be charged therewith. In *Stone v. Walker,* 79 Mass. 613, Mr. Chief Justice Shaw illustrates this distinction as follows: "If the promise is made by one in his own name to pay for goods or money delivered to, or services done for another, that is original; it is his own contract on good consideration, and is called original, and is binding on him without writing. But if the language is 'Let him have money or goods, or do service for him, and I will see you paid,' or 'I promise you that he will pay,' or 'If he do not pay, I will,' this is collateral, and, though made on good consideration, it is void by the statute of frauds." This statement of general principles is subject, however, to the qualification that the use of any particular set of words is not, of itself, necessarily controlling. "Whether an undertaking is original or collateral merely, is to be determined, not from the particular words used, but from all the cir-

cumstances attending the transaction." *Blank v. Dreher,* 25 Ill. 331. In determining this question, one of the recognized tests is whether the credit is given to the person sought to be charged, or to someone else. *Geary v. O'Neil,* 73 Ill. 593; *Schoenfeld v. Brown,* 78 Ill. 487. Where the price of goods sold and delivered is charged upon the seller's books to the person to whom they are delivered, that fact, if unexplained by other circumstances, is generally considered as strong evidence going to show that credit was given to such person. *Lusk v. Throop, supra.* "If one has a claim against another, and keeps books, it will so appear on the books, and it will require very strong evidence to show the entry was made by mistake." *Hardman v. Bradley,* 85 Ill. 162. Such evidence is not conclusive, however. It may be rebutted or explained, and therefore the whole question becomes a question of fact to be determined by the jury from all the circumstances, under proper instructions. *Lusk v. Throop, supra; Ruggles v. Gatton,* 50 Ill. 412.

In this case, it was admitted that appellee did not enter upon its books of account any charge against appellant for the price of the brick that were delivered. It charged the price of the brick directly to Cox Brothers. A copy of appellee's ledger account was offered in evidence and shows that the items charged for brick furnished to appellant were charged to the account of Cox Brothers in precisely the same manner as other sales, previously made by appellee to Cox Brothers, were charged. No attempt was made to rebut the inference naturally arising from this fact, and this evidence, unexplained, tends strongly to prove that at the time of the delivery of the brick, appellee did not consider appellant as primarily its debtor, but intended to collect its claim from Cox Brothers if it could, and regarded the promise of Pray as a guaranty only. The special findings of the jury show that the jury took this view of the matter, and in our opinion, this is the only reasonable

conclusion from all the facts and circumstances in evidence. This being so, it must be held that the promise of Pray, on behalf of appellant, "to see that the account was paid," or "to guarantee the account," was a collateral undertaking to answer for the debt or default of Cox Brothers. It was not essential, however, to the validity of this promise, that the promise itself should be in writing. It was sufficient, under the statute, that the promise be evidenced by "some note or memorandum thereof" in writing, signed by appellant. We think that appellant's letter of November 13, 1911, was a sufficient "note or memorandum" in writing to meet this requirement of the statute. We are also of the opinion that the same letter, when read in connection with the letter of November 11, 1911, clearly shows that Pray had full authority to make the promise in question for and on behalf of appellant. Appellant's letter of November 13, 1911, refers specifically to appellee's claim "against Cox Brothers for material delivered to them for my building." It is addressed to appellee and states that, "your claim will be fully protected," that Pray "has full charge and is paying out all the bills," and that "he will take care of and protect you." Bearing in mind that this letter was written in reply to a letter from appellee in which, notwithstanding the promise of Pray, which is mentioned in the letter, appellee insists upon some assurance from appellant himself regarding the matter, and asks for his personal guaranty, there does not seem to be any reasonable doubt that appellant, with full knowledge of all the facts, intended by his letter to ratify, approve and confirm all that Pray had done and promised to do on his behalf.

These conclusions bring us naturally to the only part of appellant's contention that, in our judgment, presents any serious difficulty, viz.: Is there a variance between the plaintiff's statement of claim and

the proofs, and is appellant in a position to urge that objection? It will be noticed that the statement of claim says, in effect, that when Cox Brothers first ordered appellee to deliver the brick in question to appellant (which was "on or about August 1, 1911") appellee "then and there refused to deliver the said brick on the credit of said Cox Brothers." The statement of claim does not, however, allege that appellee persisted in its refusal after the promise of Pray was made. On the contrary, the next averment of the statement of claim is that "on or about August 7, 1911" (seven days later), Frank M. Pray, as the agent for appellant, "agreed with the plaintiff to see that the plaintiff would be paid for all brick *so delivered and to be delivered as aforesaid,*" and "that relying on said promises, the plaintiff delivered to said Cox Brothers *on their order,* 60,000 brick at $22 per M." This is not an averment of an absolute promise on the part of appellant to pay for the brick, but amounts to an allegation that the plaintiff was induced, by the promise of appellant's agent, to withdraw its refusal and to deliver the brick to Cox Brothers on *their* order, that is, to extend credit to them in reliance upon appellant's collateral promise "to see the plaintiff paid" for all brick ordered by them. Under this construction of the statement of claim, there is no variance between its allegations and the proofs. This was the construction placed upon the statement of claim by appellant himself in his pleadings; for in his affidavit of merits (which, in the Municipal Court, takes the place of a plea), appellant states "that the said alleged agreement in said amended statement of claim is a promise to answer for the debt, default, or miscarriage of another, to-wit: Cox Brothers, and that the said alleged agreement is not evidenced by a writing as required by statute." Manifestly, this defense is wholly inapplicable if, as appellant now contends, the statement of claim sets up an original

undertaking instead of a collateral promise to answer for the debt of another. Furthermore, even if it could be held that the statement of claim is a statement of an original promise, we think that appellant is not in a position to raise the question of variance in this court, for the reason that the alleged variance was not specifically pointed out in the trial court, where the statement of claim could have been amended. It is true that at the close of the plaintiff's evidence, appellant made a motion to instruct the jury to find the issues for the defendant, upon the ground "that the *evidence shows* that there was no original undertaking, but a collateral undertaking, void under the statute of frauds;" but there is no reference in this motion to the statement of claim. If appellant's counsel intended by this language to call the attention of the court and opposing counsel to the alleged variance between the statement of claim and the evidence, they were unfortunate in the choice of words by which they expressed that intention. A reading of the record convinces us that the trial court did not so understand the motion, and did not, in fact, rule on any question of variance. An objection of that character must be presented to the trial court in more unmistakable terms than the motion made in this case, so that, if necessary, the proper amendment to the pleadings may be made.

It is urged that the court erred in refusing to permit appellant to show that the word "protect" had a "particular meaning" among architects and material men. We think there was no error in this ruling. The two November letters, taken together, leave no room to doubt what the parties themselves meant by the word "protect," and it was therefore not material whether it had a different meaning as generally used by architects and material men. Furthermore, when the objection to the question was sustained no offer was made to prove by the architect

that the word has a special meaning among architects and material men which is different from the ordinary well-understood meaning of the word itself.

Nor do we think there was any error in permitting the plaintiff's witnesses to testify to admissions made by the architect after the November letters were written. No payment had been made up to that time, and Pray was still acting as appellant's agent. We think the evidence was admissible as part of the *res gestae*.

The contention that the court erred in refusing to permit alleged impeaching evidence to be introduced is also without merit. The witnesses who were sought to be impeached admitted that they had testified upon the former trial as was claimed, and there was therefore nothing to impeach. Moreover, the form in which the impeaching questions were put to the stenographers who reported the former trial was clearly improper.

As to the alleged error in admitting a copy of the letter of November 11, 1911, the objection that no notice to produce the original had been shown, was not made at the time, and cannot be made here for the first time.

Finding no reversible error in the record, the judgment of the Municipal Court will be affirmed.

*Affirmed.*