## G. M. Duzenbery, Appellee, v. William Nimmo, Appellant.

### Gen. No. 7,159.

1. FRAUDS, STATUTE OF—*when landlord's promise to pay for goods sold to tenant is original promise.* A verdict against a landlord for the price of grain sold to his farm tenant will not be reversed as against the evidence where there is evidence that the grain was delivered to the tenant at the landlord's request and upon his promise to the seller to "see that you get your money," the tenant being unknown locally and without credit, that the grain sold inured to the benefit of the landlord who was unwilling to sell the tenant his own grain on the tenant's credit, that the account was charged on the seller's books to the tenant "by" the landlord and that the seller took a second mortgage on the tenant's property at the landlord's request and statement that it would help the landlord, although there is evidence tending to bring the agreement within the statute of frauds and the seller accepted the proceeds from the foreclosure of the second mortgage.

2. FRAUDS, STATUTE OF—*instruction as to promise to pay debt of another.* In an action against a landlord for the price of grain sold to his tenant by plaintiff at the landlord's request, an instruction that if the jury believe from the evidence that the landlord told plaintiff to extend credit to his tenant and that he would pay the same, and that such promise was made by the landlord before the credit was extended to the tenant, they shall find for the plaintiff, even though the grain was charged to the tenant, is not erroneous as making the test as to whether the landlord's promise was original or collateral solely dependent upon whether the goods were delivered before or after the promise was made.

3. HARMLESS AND PREJUDICIAL ERROR—*error in instructions harmless where objector's instructions contain same error.* Alleged error in instructions given at plaintiff's request is not reversible where defendant's instructions are objectionable in the same particular.

4. FRAUDS, STATUTE OF—*sufficiency of instruction as to essential facts to support recovery.* In an action against a landlord for the price of grain sold to the tenant at the landlord's request, where the evidence showed that the plaintiff had joined with other creditors of the tenant in taking a second chattel mortgage from the latter and had accepted part of the proceeds of the foreclosure thereof, an instruction, which in every effect stated that if the jury

believe from the evidence that by so doing the plaintiff did not intend to release any claim he might have against the landlord such result did not follow, is not misleading where, from the instructions as a series, the jury could not have misunderstood what facts were necessary to take the case out of the statute of frauds.

Appeal by defendant from the Circuit Court of Livingston county; the Hon. STEVENS R. BAKER, Judge, presiding. Heard in this court at the October term, 1922. Affirmed. Opinion filed March 16, 1923.

ROBERT HENNING and F. A. ORTMAN, for appellant.

C. F. H. CARRITHERS and P. A. GIBBONS, for appellee.

MR. JUSTICE PARTLOW delivered the opinion of the court.

Appellee, G. M. Duzenbery, began an action of assumpsit in the circuit court of Livingston county against the appellant, William Nimmo, to recover the price of certain grain sold by appellee to Jacob Schenck, who was a tenant of appellant, and for which grain appellee claims the appellant obligated himself to pay. The pleadings consisted of the common counts, the general issue, and a plea of the statute of frauds. There was a trial by jury and a verdict for appellee for $200. Judgment was rendered upon the verdict and from that judgment this appeal was prosecuted.

As grounds for reversal the appellant contends that the verdict is contrary to the evidence, that the evidence brings the case clearly within the statute of frauds, and for that reason the appellant was not liable, and the judgment should be reversed. The evidence shows that appellee was engaged in buying and selling grain at Fairbury, Illinois. The appellant was the owner of a farm located near that town. In the fall of 1919, appellant leased his farm to Jacob Schenck, who had previously farmed near Fairbury, but who was then farming in Michigan. Schenck, in December, 1919, moved to Fairbury where he resided until the first of March, 1920, when he moved onto the

farm of appellant. The first feed purchased by Schenck from appellee was on December 26, 1919, and amounted to $61.50. On December 30, 1919, Schenck gave a check to appellee for $200, which was credited on his account. The next item purchased by Schenck was on January 22, 1920, and amounted to $61.70. Subsequent purchases were made until the bill amounted to $441.25, which included $14 interest. The amount of the account was not disputed by appellant, but he contends that he was not liable for the bill.

The ground for recovery is based upon a conversation between appellant and appellee at the latter's office in the early part of December, 1919. There were present at this conversation appellant, appellee and his son, Grant Duzenbery, and William Suitor. The appellee testified that appellant came into the office and said he had a man by the name of Schenck coming from Michigan to farm his place for the next year, and that Schenck was going to need considerable feed. He said Schenck had some money but he did not know how much, and appellee replied that he was not acquainted with this man and did not know him. Appellant said: ''Well, it will be all right. You let him have the feed and I will see that you get your money from him. You will get the crop when it is harvested or brought in anyway, and you stand a good show of getting your money that way, but if you don't get it that way, I will see that you get it.'' The appellee is corroborated in almost every material respect by the testimony of his son, Grant Duzenbery, except that the son used the word ''guarantee'' and said that appellant said he would guarantee the money for the feed. The testimony of the appellant and William Suitor does not establish an original undertaking and does not take the case out of the operation of the statute of frauds.

This is all of the direct evidence bearing upon the question as to whether the statute of frauds applies,

but there are other facts which have their bearing in the case. The evidence shows that after Schenck moved on the farm he incurred considerable indebtedness, and finally gave up farming and left appellant's place on August 5, 1920, prior to the harvest of any of the crops. At the time he left, Schenck was indebted to the appellant in the sum of $3,660, and was also indebted to the appellee and various other creditors. In May, 1920, the appellant procured from Schenck a chattel mortgage to secure the indebtedness of Schenck to appellant. On May 31, 1920, Marshall Gordon, representing Walton Brothers, one of the creditors, met the appellee on the street and talked with him concerning the respective accounts against Schenck. As a result of this conversation they went to see Schenck and had a talk with him. Later they called upon the appellant for the purpose of getting some security on their accounts. They requested the appellant to sign the notes which Schenck had given them for their accounts, but this he refused to do. It was then agreed between the creditors that they would take a second chattel mortgage on the property of Schenck, and if appellant would take possession of the crop and pay all running expenses, there might be enough money realized to pay both mortgages. Appellant agreed to this, and a second mortgage was executed securing the notes given by Schenck to the various other creditors which included the note of the appellee.

There is evidence tending to show that during this conversation between Schenck and the appellee, Schenck told the appellee he was out of feed corn, and appellee replied that if appellant would stand good for it Schenck could come and get some corn in the morning. Appellant told appellee he would stand good for the corn, and the next morning Schenck bought a load of corn of the appellee amounting to $115.35, which was subsequently paid for by the appellant.

The creditors to whom the second chattel mortgage was given agreed that the Farmers State Bank should look after their mortgage. After the crops were harvested, appellant foreclosed the first chattel mortgage. Appellee, together with other creditors, were present at the time the property was sold, and directed the auctioneer to sell the articles of personal property which were included in the second chattel mortgage but which were not included in the first. The proceeds of this sale from the second mortgage were turned over to the Farmers State Bank and divided among the creditors as far as the money would go.

The principal question is whether these facts bring this case within the statute of frauds so as to relieve the appellant from liability to pay the balance of the claim due. Under the statute of frauds, no action shall be brought to charge the defendant on any special promise to answer for the debt of another unless the promise, or some memorandum thereof, is in writing signed by the party to be charged. Where goods are sold to a person, the promise of a third person that he will see that they are paid for guarantees the payment, and is simply a promise to answer for the debt of another and is not an original promise. *Combs v. Pulliam,* 190 Ill. App. 350. The provisions of the statute apply to promises, the main purposes of which are to assume or guarantee the debt of another, and they do not apply to cases in which credit is extended to the promisor, or to cases in which the object of the promise is to promote some interest, purpose or advantage of the promisor. *Geelan v. Reid,* 22 Ill. App. 165; *Bonner & Marshall Co. v. Hansell,* 189 Ill. App. 474; *Granite City Lime & Cement Co. v. Board of Education,* 203 Ill. App. 134. In determining whether a promise is original or collateral, the test is whether credit is given to the person sought to be charged or whether credit is given to someone else. *Brown v. Reinberger,* 177 Ill. App. 297; *Bridwell v. Utt,* 205 Ill. App. 67; *Lusk v. Throop,* 189 Ill. 127.

The evidence of the appellee and his son, standing alone, was sufficient to make this promise an original undertaking on behalf of the appellant and to render him liable for the account. On the other hand, the evidence of the appellant and his witness, Suitor, brought the case clearly within the provisions of the statute of frauds. There are, however, other facts to be taken into consideration in determining the weight of the evidence. Appellee did not know Schenck. He was an entire stranger to him and there was no reason apparent why he should extend credit to him in any amount. It was appellant who opened the negotiations for this credit when he went to the place of business of appellee, before the tenant went on the farm, and had a talk with the appellee relative to the feed the tenant would be required to buy. The tenant was going onto the farm of the appellant, and it was necessarily beneficial to the appellant and was to his interest that the tenant should have feed in order that the farm might be properly operated, and it was of benefit to appellant that the tenant should be able to obtain what feed was necessary to take care of his stock. The credit therefore inured to the benefit of the appellant. A further reason for appellee extending the credit upon the promise of the appellant was that the appellant, at that time, had ample grain on the farm belonging to appellant to satisfy the necessities of the tenant, but appellant stated that he did not wish to furnish this grain to the tenant for the reason that he could not keep his account straight with the elevator. This fact being true, it seems unreasonable that appellee would sell and deliver grain to an unknown person without security, in the face of the evidence that appellant was not willing to take a chance on letting the tenant have the grain out of the bins on the farm. The jury were justified from all the evidence in finding that the credit was extended to appellant and that the facts do not come within the statute of frauds.

Appellant insists that all of this feed was charged to Schenck on the books of the appellee, and this is a circumstance tending to show the credit was extended to Schenck. It has been held that the manner in which the charge is made on the books may be taken into consideration in determining the party to whom the credit was extended. *Hardman v. Bradley,* 85 Ill. 162; *Lusk v. Throop,* 189 Ill. 127. The evidence shows that the charge was to Jacob Schenck by William Nimmo, or Jacob Schenck—William Nimmo, and that the name of William Nimmo was written on the day book, either at the time of obtaining the grain, or immediately thereafter when the bookkeeper posted the account. The evidence also shows that the account was charged this way for the reason that the appellant had a personal account on the books of the appellee at that time, and he desired to keep these accounts separate. We do not think the manner in which the account was kept on the books even tended to show that the credit was extended to Schenck instead of to the appellant.

It is urged by appellant that credit was extended on a collateral promise and this contention is based on the cross-examination of the appellee wherein the following questions were asked:

"Q. As I understand you, Mr. Duzenbery, Mr. Nimmo told you in his first conversation that you would get Mr. Schenck's crop, and if you didn't he would see that you got your money? A. Yes, sir.

"Q. Was it upon that statement that was made to you by Mr. Nimmo at that time that you delivered those goods? A. Yes, sir."

We do not think these answers of the appellee were either material or controlling. In fact it is apparent that the witness did not fully understand the import of either the questions or the answers. Just prior to this examination he had testified in detail to the transaction between him and the appellant. The legal effect of that evidence was to show that appellant was

liable for this account. It is unreasonable to believe that immediately after so testifying he answered two questions which completely nullified his prior testimony.

Appellant next contends that the fact that appellee joined with other creditors in taking a second chattel mortgage, foreclosed the same, and accepted a part of the proceeds of sale, is strong evidence he was not looking to appellant for his pay but that he was looking to Schenck for the same. Appellee testified that a few days before the second chattel mortgage was given, he had. a conversation with appellant in which appellant asked him to take this second mortgage, told him it would help appellant if he took the chattel mortgage, and that the taking of the chattel mortgage would be all right. When the fact of the taking of this mortgage is considered in connection with the evidence of this conversation with appellant, it renders the incident of minor importance. The most that can be said of all of the evidence is that it was in such conflict that it became a question of fact for the jury to say whether this sale came within the statute of frauds. Six witnesses testified that the general reputation of the appellant for truth and veracity was bad. He was sustained on this point by nine witnesses. It was for the jury to say what force and effect this attempted impeachment had. If the jury believed the evidence on behalf of the appellee, their verdict was right. We cannot say that the verdict was so contrary to the weight of the evidence that we should reverse the judgment.

The appellee's second instruction told the jury that if they believed from the evidence that the defendant told the plaintiff to extend credit to his tenant and that he would pay the same, and that such promise was made by the defendant before any credit was extended, then they should find the issues for the plaintiff, even though they might find from the evidence

that the account was charged to the tenant. The complaint against this instruction is that, under the language used, the test as to whether a promise is original or collateral depends solely upon whether the goods were delivered prior or subsequent to the making of the promise. All that is necessary to refute this contention is to read the instruction. If appellee's second instruction is incorrect then appellant's second instruction is also incorrect for the reason that they are both subject to the same criticism. Both instructions announce a correct rule of law applicable to the facts. The same objection is made to the third instruction on behalf of the appellee, and the same rule applies to that instruction.

The fifth instruction told the jury that if they believed from the evidence that the plaintiff in taking the note and chattel mortgage from the tenant of the defendant did not intend thereby to release any claim he had against the defendant, if any claim he had, then the plaintiff did not, by taking such note and chattel mortgage, release any claim of indebtedness he had against the defendant, if the jury should find from the evidence that he had any such claim. The objection to this instruction is that it is misleading, in that it singles out the taking of the note and the mortgage by the appellee and permits the jury to disregard this circumstance if they believed it was the intention of the appellee not to release the appellant on any claim he might have, regardless of whether the promise might be original or collateral, or whether the appellee had established his claim by a preponderance of the evidence. This instruction standing alone might be subject to the criticism made against it, but when it is read in connection with all of the other instructions, taken as a series, the jury could not have misunderstood as to what facts were necessary to take the case out of the operation of the statute of frauds.

The sixth instruction objected to is along the same lines as the fifth, and it is not erroneous.

We find no reversible error and the judgment will be affirmed.

*Judgment affirmed.*