## Sun Oil Company, Appellee, v. George S. Garren, Appellant.

### Gen. No. 34,602.

514

Opinion filed May 13, 1931.

B. W. ROSENSTONE, for appellant; ARTHUR ABRAHAM, of counsel.

DENT, DOBYNS & FREEMAN, for appellee.

MR. JUSTICE FRIEND delivered the opinion of the court.

Plaintiff brought suit in the superior court of Cook county to recover the sum of $1,302.71 for gasoline and other petroleum products sold to defendant during the months of December 1928, and January 1929, under a contract entered into between the parties on March 2, 1926. Defendant filed a set-off in the sum of $3,751.84. Upon the trial of the cause, a jury was impaneled and

at the close of the opening statements of counsel for plaintiff and defendant the court directed the jury to find a verdict for the plaintiff and against the defendant, and entered judgment on the verdict.

Defendant's set-off recites the contract entered into between the parties on March 2, 1926, the essential terms of which provide that plaintiff agreed to sell and defendant agreed to buy Sunoco Motor Gasoline in a quantity equal to the requirements of his two filling stations on Ogden Avenue, in Chicago, Illinois, for a period of five years from the 15th day of March, 1926, at "seller's wholesale tank wagon market price to dealers in the City of Chicago on date of delivery"; that thereafter defendant proceeded to purchase gasoline under said contract and was charged and paid therefor the seller's wholesale tank wagon market price to dealers in the City of Chicago on the date of delivery, down to the first day of August 1927; that for gasoline sold by plaintiff to defendant during the months from August 1927 to January 1928, inclusive, plaintiff charged the defendant not only the seller's wholesale tank wagon market price, as provided in the contract, but in addition thereto, the sum of two cents per gallon on all said gasoline; that plaintiff represented to defendant that said two cents per gallon was a tax, or the equivalent of a tax, assessed upon gasoline under certain of the statutes of the State of Illinois; that defendant protested the payment of the additional two cents per gallon on the ground that the tax was illegal, and that in any event he was not required to pay the tax under the contract; that plaintiff threatened defendant that if he did not pay said two cents per gallon in excess of the contract price upon each gallon of gasoline so purchased, plaintiff would refuse to sell gasoline to defendant and would fail to carry out its said contract and refuse to deliver any

further gasoline to defendant; that defendant had built up a business at said two stations in the sale of Sunoco gasoline and his livelihood and that of his family was dependent upon the continuation of successful operation of said business in the sale of Sunoco gasoline at his two filling stations; that plaintiff threatened to ruin said business and deprive defendant of a livelihood for himself and family, by refusing to carry out its said contract and deliver gasoline thereunder to the defendant, unless defendant paid plaintiff said excess of two cents per gallon on all purchases and deliveries; that being thus coerced and compelled, defendant did in fact pay to plaintiff the additional sum on each of 187,592 gallons purchased from plaintiff, aggregating $3,751.84 in excess of the contract price.

In his opening statement to the jury defendant's counsel outlined in substance the foregoing allegations of the set-off, elaborating somewhat the facts that he proposed to prove, touching upon the question of duress and compulsion. At the conclusion of the opening statement, the court, without any motion on the part of plaintiff, summarily brought the case to a close by instructing the jury to return a verdict in favor of plaintiff.

The principal question thus presented for decision is whether it was proper for the court to direct a verdict for plaintiff upon the opening statement of counsel. Plaintiff relies upon three decisions to sustain the court's ruling. *Moore v. Prussing,* 165 Ill. 319; *Oscanyan v. Winchester Repeating Arms Co.,* 103 U. S. 261; and *Wilson v. Larson,* 210 Ill. App. 101.

In *Moore v. Prussing, supra,* the defendants upon the trial of the cause *offered testimony* which would clearly not have been admissible under the plea of the general issue, and the court merely held there could be no question as to the power of the trial court under

proper circumstances to exclude evidence not admissible under the pleadings, and, at the close of the evidence, to direct a verdict.

In *Oscanyan v. Winchester Repeating Arms Co.,* *supra,* a counsel-general of the Turkish government, residing in this country, entered into a contract whereby, in consideration of a stipulated percentage, he agreed to use his influence in favor of a manufacturing company here with an agent of that government sent to examine and report in regard to the purchase of arms for it. By exercising his influence, sales of arms were made by the company to the Turkish government, and he brought suit in the federal court to recover the percentage. Upon plaintiff's opening statement to the jury, the court directed a verdict for defendant and entered judgment accordingly.

The Supreme Court of the United States affirmed the judgment of the trial court, and based its decision upon the disclosure by counsel's opening statement of a contract that was void as being corrupt in itself and prohibited by morality and public policy. As appears from the court's opinion in the *Oscanyan* case, the opening statement was unambiguous, made with great fullness of detail and apprised the court of all the facts out of which plaintiff's claim originated, and because it clearly appeared from the facts outlined that no judgment could rest upon a contract so utterly void, the court properly terminated the case. Manifestly if a cause of action is such as no court would entertain, it becomes the duty of the court to raise the question in the interest of due administration of justice and not for the benefit of either party, and where a claim of illegality is made, and it appears by counsel's opening statement that the rights of the parties are based entirely upon a contract or transaction that is void as being corrupt and against public policy, the

parties cannot compel a court to adjudicate upon alleged rights growing out of such a contract. (*Wright v. Cudahy,* 168 Ill. 86; *Crichfield v. Bermudez Asphalt Paving Co.,* 174 Ill. 466.)

The *Oscanyan* case approved the principle by which a court may, under certain circumstances, terminate litigation by means of a directed verdict. They say by way of illustration that, "if, on a trial for a homicide, it should appear from the opening statement that the accused had been pardoned for the offense charged, it would be a waste of time to listen to the evidence of his original criminality. . . . So in a civil action, if it should appear from the opening statement that it is brought to obtain compensation for acts which the law denounces as corrupt or immoral, or declares to be criminal, such as attempts to bribe a public officer, to evade the revenue laws, or to embezzle the public funds, the court would not hesitate to close the case without delay." The facts in the *Oscanyan* case, as well as the illustrations cited by Mr. Justice Field, who speaks for the court, indicate, however, the very cautious and limited application of the practice. Obviously, there is no analogy between that case and the one at bar.

The third case cited by plaintiff is that of *Wilson v. Larson,* 210 Ill. App. 101, wherein the defendant made a definite offer of proof which, as the court states, "is quite different from an opening statement, and, upon his offer, the court had the power to rule." Thus the court in its opinion and by express language distinguished the situation in that case from the one at bar, showing the case cited to be inapplicable to the circumstances before us.

The question as to whether or not a court in this State, except under special circumstances, may direct a verdict upon the opening statement of counsel, is

exhaustively discussed in the case of *Pietsch v. Pietsch,* 245 Ill. 454, which seems to be the leading decision on the subject in Illinois. There a suit was instituted in the municipal court of Chicago in forcible detainer for the possession of a lot. After a jury had been impaneled and sworn, plaintiff's attorney made an opening statement of the case to the jury, reciting the evidence that plaintiff proposed to offer in support of his claim. Thereafter counsel for the defendants stated to the jury, in substance, that the defendant Helen Pietsch, being the owner of the premises in question, made a mortgage which was foreclosed and about the time when the redemption was to expire, went to the plaintiff, her brother-in-law, and procured a loan, he taking the deed in his own name as security; that he advanced something over $4,000 upon which a little less than half had been repaid by Helen Pietsch; that three or four years afterwards defendant had another piece of property upon which there was a mortgage of $8,800, and plaintiff said he would loan her enough money to take that up; that plaintiff agreed to allow Mrs. Pietsch to retain possession of the premises in question, and that she was entitled to remain there. At the close of this statement the court instructed the jury to return a verdict finding the defendants guilty of unlawfully withholding possession of the premises and that the right of possession was in the plaintiff. The Supreme Court reversed the judgment of the trial court and remanded the cause. Because we regard the *Pietsch* case as controlling in Illinois, upon the question before us, we quote therefrom at length:

"When the jury had been sworn to try the issues and render a verdict according to the evidence it was the privilege of the attorney for each party, if he saw fit to do so, to make an opening statement of what

he expected to prove. Such a statement is not intended to take the place of a declaration, complaint or other pleading, either as a statement of a legal cause of action or a legal defense, but is intended to advise the jury concerning the questions of fact involved, so as to prepare their minds for the evidence to be heard. How full it shall be made, within reasonable limits, is left to the discretion of the attorney, but the only purpose is to give the jury an idea of the nature of the action and defense. To relate the testimony at length will not be tolerated. (I Thompson on Trials, 267.) A party is entitled to introduce evidence and prove a cause of action or to defend against evidence tending to sustain a cause of action if no statement at all is made, and is not confined in the introduction of evidence to the statement made in the opening, if one is made. The opening statement may be wrong as to some facts, and there is no requirement that it shall give all the facts of the case, which may turn out to be different from the statement. The argument that a court may direct a verdict, not upon the evidence or the want of evidence but upon the statement of an attorney, rests mainly upon the power of an attorney to make admissions binding upon his client and to waive his rights. There is no dispute about the authority of an attorney to admit facts on the trial and waive the necessity of introducing evidence as to such facts, but the authorities cited relate to such admissions in the trial of the case. That the opening statement to the jury cannot be treated as an admission of facts binding upon the client was decided in *Lusk v. Throop,* 189 Ill. 127, where the refusal of an instruction that any statement made by the attorney for the plaintiffs in his opening statement, about what the evidence would show, was as binding upon the plaintiffs as if the plaintiffs themselves had made

such statement, and as such should be considered by the jury in making their verdict, was endorsed by this court. If the jury could not treat statements of an attorney, in his opening statement, as to what the evidence would show as admissions of fact binding on the client and consider the same in making up their verdict, the same rule must necessarily be applied to the court, and it follows that there was no admission here of the cause of action or that there was no defense to it. Even if it could be said that the attorney admitted that the legal title to the lot was in the plaintiff and the title could not be tried in forcible detainer, there was no attempt to try the question of title. The title was not involved and could not be tried or determined, but it did not necessarily follow that the plaintiff was entitled to the possession of the property. The law in England is, that a court cannot take such action as was taken in this case upon an opening statement. In *Fletcher v. London and Northwestern Railway Co.,* 65 L. T. Rep. 605, the judge non-suited the plaintiff on the ground that the opening statement did not show any cause of action, and it was held that the judge at the trial had no right to non-suit a plaintiff upon his counsel's opening statement without the consent of his counsel. It was pointed out that a suitor might lose his case because his counsel had omitted or mis-stated something in the opening, and the course adopted in that case was condemned as most dangerous to the rights of litigants. The law is the same in Wisconsin. (*Fisher v. Fisher,* 5 Wis. 472; *Hadley v. Western Transit Co.,* 76 id. 344.) The same argument was made to the Wisconsin court that is made here,—that it would be convenient and conduce to the speedy administration of the law and justice to permit the court to decide the case upon an opening statement; but while that was conceded by the court, the practice was

considered too dangerous to the rights of clients to be sanctioned. It is undoubtedly true that the method adopted in this case would be expeditious, and if there were no omissions or defects in the statement, and it was certain that the evidence would turn out in accordance with it, the court might be enabled to do justice; but it would be a still more expeditious method and equally conduce to the ends of justice for the court to call up the attorneys and examine them and decide the case on what they say before calling a jury, whereby much time, labor and expense be saved. But if parties have a right to a trial by jury of the issues made by the pleadings, the verdict must rest upon evidence or want of evidence and not upon opening statements.''

The reasons upon which the court's conclusions are based, in the foregoing decision, are sufficiently clear to require no further comment. Defendant's set-off in the case at bar and counsel's opening statement to the jury indicated that the defendant's claim was based upon compulsion and duress. Compulsion may, under some circumstances, be availed of as a ground for the recovery of payments made, and is primarily a question of fact. While we are not disposed to pass upon the question whether or not defendant could present a case upon facts showing compulsion, we believe that he is entitled to introduce such evidence as he has and prove his case if he can. This right was denied him, and for that reason the judgment of the trial court will be reversed and the cause remanded.

*Reversed and remanded.*

WILSON, P. J., and HEBEL, J., concur.